**In re BRAY ENTERPRISES, INC., Debtor.**

**BRAY ENTERPRISES, INC., Plaintiff,**

v.

**FIRST VERMONT BANK AND TRUST COMPANY, Defendant.**

**Bankruptcy No. 82–233.**
**Adv. No. 83–0093.**

United States Bankruptcy Court, D. Vermont.

Jan. 23, 1984.

W. Bradney Griffin, Rutland, for Bank.

Peter H. Banse, and Paul Kulig, Rutland, for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On October 12, 1982 the debtor filed for relief under chapter 11 of the Bankruptcy Code (Code).

The instant matter comes before the court on the debtor's three-pronged motion of August 9, 1983 for an injunction to restrain the First Vermont Bank and Trust Company (Bank), who is a creditor of the debtor, from violating the automatic stay of Code section 362(a); for a declaration that the Bank is in contempt of this court for violating the automatic stay; and for an award of costs and attorney's fees incurred in connection with the prosecution of the instant motion. The debtor alleges that the Bank, with full knowledge of the pendency of this proceeding in bankruptcy and of the existence of the automatic stay, and without obtaining relief from the stay, proceeded against assets of the debtor in Rutland Superior Court.

Hearings on the motion were held and continued from time to time. The final hearing was held on November 23, 1983, at which time the matter was taken under advisement in accordance with a stipulation by the instant parties that the court make its determination on the basis of the pleadings, exhibits and transcript of the state court action, entitled "First Vermont Bank & Trust Company vs. Matthew's Leasing

Corporation, Stewart Tractor & Equipment Company, Inc., Vermont White Truck Center, Inc., John Matusiak and Patricia A. Matusiak, Docket No. S427–81Rc."

## BACKGROUND

Vermont White Truck Center, Inc. (Vermont Truck) traded in trucks and tractors and also leased inventory equipment through Matthew's Leasing Corporation prior to management's liquidation of the corporation in 1981. Vermont Truck was wholly owned by Mr. John J. and Mrs. Patricia A. Matusiak (the Matusiaks) who were its sole officers. Mr. Matusiak was president and sole director of the corporation. During its corporate existence, Vermont Truck never held a corporate meeting and there are no minutes or other corporate records attesting to any formal meeting of corporate officers. Vermont Truck has never performed any act contrary to Mr. Matusiak's personal will.

Stewart Tractor & Equipment Company, Inc. (Stewart Tractor) was the predecessor corporation to Vermont Truck. Acquired by the Matusiaks in 1976, Stewart Tractor was, immediately following the acquisition and thereafter, wholly owned by the Matusiaks, who were its sole officers. Mr. Matusiak was president and sole director of the corporation during the period of ownership by the Matusiaks. During this period of ownership, the corporation never held any corporate meeting and there are no minutes or other corporate records attesting to any formal meeting of corporate officers. During this period of ownership, the corporation never performed any act contrary to the personal will of Mr. Matusiak.

Bray Enterprises, Inc. (Bray), the instant debtor-plaintiff, is a wholly owned subsidiary of Vermont Truck. Mr. Matusiak is president and sole director of Bray; Peter H. Banse, Esquire, attorney for the debtor in this proceeding in bankruptcy, is corporate secretary. The corporation was set up in 1981 to be the transferee of assets owned by the parent corporation Vermont Truck as transferor during the course of

liquidation by management of Vermont Truck in 1981. Mr. Matusiak acceded to the presidency of Bray when its original president, Peter Bray, a personal friend of Mr. Matusiak, resigned in 1981. During its corporate existence, Bray has never held a corporate meeting and there are no minutes or other corporate records attesting to any formal meeting of corporate officers. Bray has never performed any act contrary to the personal will of Mr. Matusiak.

Matthew's Leasing Corporation is a Vermont entity whose president and principal is Mr. Matusiak. The company offices are located in Proctor, Vermont, being the premises at which Mr. Matusiak was served with a certain motion and a writ of attachment as set forth in the findings of fact.

## FACTS

Facts as follow are established by the pleadings, exhibits and transcript of the state court proceeding on the matter underlying the instant motion:

In 1979 Stewart Tractor acquired a used 1975 Thiokol Spryta tractor, model 1201, serial no. 1496 (snowgroomer), from Mt. Mansfield, Inc., for a trade-in price of $7,500. The snowgroomer became an asset of Vermont Truck when Stewart Tractor became Vermont Truck sometime prior to June 10, 1981.

On August 20, 1981 Vermont Truck listed the snowgroomer for sale through an equipment brokerage firm, Knapp Associates, Inc. (Knapp).

On February 3, 1982 in an action brought in Rutland Superior Court, by the Bank, against Matthew's Leasing Company, et al., John Matusiak, as President of Matthew's Leasing Company, was served with a motion for a writ of attachment upon which a hearing was set by the court to be held February 4, 1982, at 1:30 p.m., for the purpose of showing cause why a writ of attachment against the snowgroomer should not be granted to the Bank.

On February 4, 1982, at 10:00 a.m., before any writ of attachment was issued,

Vermont Truck transferred the snowgroomer to Bray in exchange for the promise of Bray to pay certain debts of Vermont Truck upon the occurrence of a resale of the snowgroomer, by Bray, to a third party. For the purpose of securing a third party buyer, Bray had Knapp continue to list the snowgroomer for sale.

On April 19, 1982, Ski Valley Club, Inc. of Naples, New York, (Ski Valley) made a contract with Bray to buy the snowgroomer for a purchase price of $13,750. On July 15, 1982, Bray executed and delivered a bill of sale to Ski Valley, and Ski Valley paid the purchase price to Knapp as escrow agent under instructions to release the net proceeds of sale to Bray after the payment of certain expenses incurred in the sale and upon the occurrence of certain further conditions. The escrow account balance after expenses was $12,446.

Mr. Matusiak is a guarantor of certain notes in default signed by Matthew's Leasing Corporation and Vermont Truck, and held by the Bank.

Throughout mid-1982 and continuing through October 1982, the Bank prosecuted its state court action against Matthew's Leasing Corporation, *et al.* On November 2, 1982, the state court declared the transfer of the snowgroomer to Bray by Vermont Truck null and void as a fraudulent transfer under Vermont Statutes, Title 9, section 2281.

## DISCUSSION

█ Code section 362(a)(1) provides that the filing of a voluntary petition, such as Bray's, operates as a stay, applicable to all entities, of

the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

The filing of Bray's petition operated as a stay, applicable to the Bank, of the continuation of any judicial proceeding against Bray or to recover any claim against Bray that arose before Bray caused its petition to be filed. However, the Bank has not instituted nor continued any judicial proceeding against Bray, who is not a party to the state court action. Therefore, the Bank's act of going forward to judgment in state court on October 22, 1982—ten days after Bray's petition was filed—did not constitute a violation of Code section 362(a)(1).

Code section 362(a)(3) provides that a petition filed operates as a stay of any act to obtain property of the estate or of property from the estate. The estate consists of all legal and equitable interests of the debtor as of the filing of the petition. Code § 541. As of the filing of the petition, Bray had a seller's interest in the proceeds of the sale, *i.e.*, in the account balance of the purchase money escrow account maintained by Knapp in connection with the sale of the snowgroomer to Ski Valley. This interest passed to the estate on the date of filing of the petition for relief on October 12, 1982. The Bank's act, ten days later, of going forward to judgment in state court was a technical violation of Code section 362(a)(3) inasmuch as the Bank there acted to acquire ownership rights to either the snowgroomer or to the escrow accounts funds which are property of the estate.

The court specifically rejects the Bank's argument that Bray had no interest in the escrow account on the date of the filing of Bray's petition. The Bank argues that Bray never had an interest in the account for the reason that Bray never had an interest in the snowgroomer because, allegedly, the transfer of that equipment to Bray by Vermont Truck was void *ab initio* as a fraudulent transfer under Vermont law. However, the snowgroomer was transferred by Vermont Truck to Bray for legal consideration, namely, the promise of Bray to pay certain legal and accounting fees owed by Vermont Truck, at such time as Bray might sell the snowgroomer to a third party. At the time of the transfer by Vermont Truck to Bray, the Bank had no

lien on the vehicle; it had merely applied for a writ of attachment.

■ The Bank argues that Vermont Truck alienated the snowgroomer in order to avoid attachment and levy. It appears, however, that there were business purposes for the transfer, namely, that Vermont Truck was in a liquidating posture and that Bray was to receive certain assets of Vermont Truck in the course of liquidation of the latter entity. Assuming, *arguendo*, that the only motivation of Vermont Truck in transferring the snowgroomer to Bray was to avoid attachment, nevertheless the transfer would not be fraudulent as to the Bank for the reason that the Bank had no lien on the vehicle at the time of the transfer.

The Bank also argues that Vermont Truck and Bray should be deemed to be *una persona* for the purpose of characterizing the transfer of the snowgroomer to Bray as fraudulent.

Although Vermont Truck and Bray, as interrelated companies with an interlocking director who did not observe corporate formalities and who as guarantor of certain debts of both corporations may be individually liable on such debts, might well be *una persona* for the purpose of "piercing the corporate veil" in the event of fixing liability as to a tort claim, nevertheless Vermont Truck acted lawfully when it transferred the snowgroomer to Bray for the reason that the Bank had no lien on the vehicle, and therefore the transfer was not fraudulent as to the Bank.

■ One who alleges that a conveyance is fraudulent must establish affirmatively all the facts necessary to make out fraud. *Darling, Adm'r v. Ricker*, 68 Vt. 471, 35 A. 376, 154 ALR 914 (1896). The Bank has not met its burden of proof under the fraudulent conveyances statute, 9 V.S.A. § 2281, and has failed to establish that, on the date of the filing of the petition, Bray had no interest in the proceeds of the sale of the snowgroomer. Bray, then, had a seller's interest in the proceeds in escrow at the time of the filing of the petition, Bray having owned and then alienated the snowgroomer after a valid transfer of the vehicle to Bray by Vermont Truck. Bray's interest in the escrow funds passed to the estate; and the Bank's act in state court, after the creation of the estate, to obtain ownership rights to the funds in escrow constituted a violation of the automatic stay.

■ A judgment is void if rendered in an action which is in violation of the automatic stay. *See, e.g.*, 2 *Collier on Bankr.* ¶ 362.11 at 362–58; *In re Reed*, 11 B.R. 258, 4 C.B.C.2d 736, 752 n. 24 (Bkrtcy.D. Utah 1981). Thus a judgment rendered in the state court would be void. However, no sanction of contempt should be imposed on the Bank, as sanctions are inappropriate where, as here, the litigant violating the automatic stay has acted in good faith, *In re Barksdale*, 15 B.R. 731, 5 C.B.C.2d 1163 (Bkrtcy.W.D.Va.1981), or where, as here, a mere technical violation of the stay has occurred, *In re Harlow*, 12 B.R. 1 (Bkrtcy. D.Vt.1981); *In re Augustino Enterprises, Inc.*, 13 B.R. 210, 212 (Bkrtcy.Mass.1981).

■ In the instant matter, the Bank had no notice that Bray was a debtor in bankruptcy prior to a few minutes before 3:00 p.m. on October 22, 1982, Bray's attorney having appeared and defended, as attorney for Mr. Matusiak in that action, for over an hour before it was brought out, through examination of Mr. Matusiak, that Bray was a debtor before the bankruptcy court; and when it was brought out that Bray was such a debtor, Bray's attorney, as attorney for Mr. Matusiak in the state court action, informed neither the Bank nor the state court as to the existence or scope of the automatic stay, nor requested that the state court hearing be immediately adjourned and the matter there be held in abeyance pending resolution before the bankruptcy court. Where a willful deliberate violation of the stay occurs, the sanction of contempt may be appropriate to effectuate the purposes of the Code. However, where the element of willfullness and deliberateness is absent, as in this case, the

sanction of contempt will not lie even if a technical violation of the stay has occurred.

For the reason that sanctioning the Bank is not appropriate under the circumstances of this case, no award of costs or attorney's fees is appropriate.

## ORDER

In accordance with the foregoing,

IT IS ORDERED, that the First Vermont Bank & Trust Company be, and hereby is, enjoined from asserting any lien against or claim to the escrow fund, except in a proceeding before the bankruptcy court.