**In re DORE & ASSOCIATES CON-
TRACTING, INC., Debtor.**

**DORE & ASSOCIATES
CONTRACTING, INC.,
Plaintiff,**

v.

**UNITED STATES of America, acting By
and Through the INTERNAL REVE-
NUE SERVICE and the Internal Reve-
nue Service, Defendants.**

Bankruptcy No. 81–00695.
Adv. No. 84–9116.

United States Bankruptcy Court,
E.D. Michigan, N.D.

Jan. 21, 1985.

John J. Hebert, Bay City, Mich., for plaintiff.

Michael Hluchaniak, Bay City, Mich., for defendant.

## MEMORANDUM OPINION REGARD-ING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

ARTHUR J. SPECTOR, Bankruptcy Judge.

Dore & Associates Contracting, Inc., the Debtor and Plaintiff herein, filed a complaint seeking to prevent the United States, acting through the Internal Revenue Service (IRS) from collecting the Debtor's tax liability from two former officers of the corporation. On October 22, 1984, the Court denied the Plaintiff's motion for a temporary restraining order. On November 16, 1984, the Court heard testimony and oral arguments regarding whether a preliminary injunction against the IRS should be granted. On December 21, 1984, the Court issued a brief order denying the Plaintiff's motion; this memorandum opinion is given to explain the Court's reasons for declining to issue a preliminary injunction. Essentially the arguments of the parties raised the following issues of law and fact: despite the apparently clear directive of the Anti-Injunction Act, 26 U.S.C. § 7421(a), does this Court have the jurisdiction to enjoin the collection of taxes by the IRS; and if so, should it do so upon the facts of this case?

The facts are relatively simple. The Plaintiff is a mechanical contractor engaged largely in public works projects. In order to secure the bonding necessary for such projects, it is necessary for Arthur P.

Dore, the Plaintiff's sole stockholder and principal officer, to provide personal guarantees. The IRS is the holder of a priority, unsecured, pre-petition tax claim of $107,-740.40 against the Plaintiff. The Plaintiff's Second Amended Plan of Reorganization, confirmed on November 10, 1982, provides for full payment of the claim within 6 years. In October of 1984, the IRS attempted to levy upon the assets of two former officers of the Plaintiff, Richard Lutterbach and Ronald Stellema, in an attempt to satisfy its claims against the Plaintiff pursuant to 26 U.S.C. § 6672(a). The alleged harm to the Plaintiff stems from an agreement made between the former officers and Mr. Dore, whereby Mr. Dore agreed to indemnify the former officers against any payments made to the IRS as a consequence of their former employment. The Plaintiff asserted that if Lutterbach and Stellema are forced to pay the government, they will look to Mr. Dore for indemnification, which will impair the ability of the Plaintiff to perform its Chapter 11 Plan of Reorganization. The Plaintiff further asserted that since the government's claim is dealt with in the plan, its rights of collection should be limited to payment according to the plan's terms and that it cannot seek accelerated payment by levying against the personal assets of the former officers. The government responded by claiming that the Anti-Injunction Act denies this Court jurisdiction to enjoin it from the lawful collection of taxes.

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Despite the apparently comprehensive language of the statute, a narrow exception to the rule was judicially created in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). The Supreme Court held that an injunction might be issued if the taxpayer could show that: (1) it had no other method of redress; (2) it was certain to succeed on the merits; and (3) other

equitable grounds for issuing an injunction, such as irreparable harm, also exist. This holding was later characterized as representing the "capstone to judicial construction of the Act," *Bob Jones University v. Simon*, 416 U.S. 725, 742, 94 S.Ct. 2038, 2048, 40 L.Ed.2d 496 (1974).

However, a recent Supreme Court decision apparently expands the category of cases outside the reach of the Act and may go so far as to overrule that decision. In *South Carolina v. Regan*, —— U.S. ——, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), the State of South Carolina sought to enjoin the Treasury Department from enforcing Section 310(b)(1) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), P.L. § 97–248, 96 Stat. 596, and also sought a declaration that this provision violated the Tenth Amendment to the United States Constitution. In explaining the scope of the *Williams Packing* test, the Court noted that prior cases did not decide whether the Anti-Injunction Act would apply where the taxpayer did not have the option of paying the tax and then suing for a refund. The Court then held that "the Act's purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy" such as a refund suit. *Id.* —— U.S. at ——, 104 S.Ct. at 1114, 79 L.Ed.2d at 382. Because the State of South Carolina had no other viable means of litigating the constitutionality of the tax, it was held that the suit was not barred by the Anti-Injunction Act.

Prior to *South Carolina v. Regan*, application in bankruptcy cases of the standards espoused in *Williams Packing* and its progeny led to a distinct split of authority; the leading cases reach opposite results. In *Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975) the Court of Appeals held that the rehabilitative policy underlying the former Bankruptcy Act overrode the constraints of the Anti-Injunction Act. The court further stated that when it was necessary for the efficient administration of the debtor's estate, bankruptcy courts

could properly enjoin the collection of taxes. Five years later the Third Circuit Court of Appeals studied the issue and came to a contrary conclusion. While the court acknowledged that there might be sound policy reasons for allowing bankruptcy courts to exercise broader injunctive power, it held that in the absence of a clear Congressional intent to create such an exception, the establishment by judicial "legislation" of a "bankruptcy exception" to the Anti-Injunction Act was unwarranted. *In re Becker's Motor Transport, Inc.*, 632 F.2d 242 (3d Cir.1980). Not surprisingly, lower court decisions discussing whether the government may be enjoined from tax collection have been diverse. *Compare In re Driscoll's Towing Service, Inc.*, 43 B.R. 647 (Bankr.S.D.Fla.1984); *In re O.H. Lewis Co.*, 40 B.R. 531 (Bankr.N.H.1984); *In re Datair Systems Corp.*, 37 B.R. 690 (Bankr. N.D.Ill.1983); *In re Jon Co.*, 30 B.R. 831, 10 B.C.D. 1005, 9 C.B.C.2d 1 (Bankr.D.Colo. 1983); *In re H & R Ice Co.*, 24 B.R. 28, 9 B.C.D. 941 (Bankr.W.D.Mo.1982); and *In re Major Dynamics, Inc.*, 14 B.R. 969, 8 B.C.D. 376, 5 C.B.C.2d 511 (Bankr.S.D.Cal. 1981) (which hold that courts possess jurisdiction to enjoin the IRS in bankruptcy proceedings notwithstanding the Anti-Injunction Act), *with In re Pressimone*, 39 B.R. 240 (Bankr.N.D.N.Y.1984) (holding that there is no bankruptcy exception to § 7421(a)) and *In re County Wide Garden Center, Inc.*, 25 B.R. 203 (Bankr.S.D.N.Y. 1982) (failing to perceive a policy reason for disregarding § 7421(a)).

The Plaintiff takes the position that because neither it nor the former officers of the corporation contest the validity of the IRS' assessment, the instant case is squarely within the exception enunciated in *South Carolina v. Regan*, and it is excused from meeting the other criteria of the *Williams Packing* test. In the alternative, the Plaintiff claims that it would also be entitled to injunctive relief even if the standards of *Williams Packing* are applied.

The Anti-Injunction Act is essentially a statute which denies federal and state courts the subject matter jurisdiction to entertain actions which would interfere with the regular collection of taxes. As noted above, in *Williams Packing*, the Court carved out a narrow exception to the jurisdictional bar; however, the holding of *South Carolina v. Regan* necessitates a re-evaluation of the vitality of the earlier decision as a guideline for determining a party's right to enjoin the Internal Revenue Service. A careful reading of both cases compels us to conclude that, to the extent *Williams Packing* and subsequent cases required taxpayers to demonstrate a certainty of success on the merits in order to be eligible for injunctive relief, they were effectively overruled by *South Carolina v. Regan.*

In *South Carolina v. Regan,* the Court did not address the merits of the state's arguments regarding the constitutionality of TEFRA § 310(b)(1); it merely discussed whether the Anti-Injunction Act was intended to withdraw equity jurisdiction from courts when the party seeking relief could not realistically avail itself of other remedies such as refund suits or actions by third parties in which the complainant's arguments may be raised. Writing for the Court, Justice Brennan noted that previous cases examining the breadth of the Anti-Injunction Act and denying injunctive relief were expressly based on the availability of alternative remedies. *Id.,* —— U.S. at ——, 104 S.Ct. at 1113, 79 L.Ed.2d at 380. After finding that South Carolina had no other way to challenge the validity of the new law, the Court concluded that "the Act was intended to apply only when Congress has provided an alternative avenue for the aggrieved party to litigate its claims on its own behalf. Because Congress did not prescribe an alternative remedy for the plaintiff in this case, the Act does not bar this suit." *Id.,* —— U.S. at ——, 104 S.Ct. at 1116, 79 L.Ed.2d at 383. (footnote omitted).

The sweeping language used by the Court goes far beyond a simple clarification of one of the elements established by *Williams Packing,* for the exception expressed in *South Carolina v. Regan* is so broad that it engulfs the previous require-

ment of demonstrating certainty of success on the merits. Instead, it seems that the Court meant to forge a new, less restrictive, standard. This interpretation is even more compelling when one realizes that the Court could have easily applied the *Williams Packing* guidelines to the state's case and reached the same result. Using this approach, the Court first could have determined, as it did, that South Carolina had no other means of redress. Second, it could have evaluated whether the state would be irreparably harmed without the injunction. Finally, it could have decided whether there was a certainty of South Carolina's successful challenge to the law. However, all the Court found was that the first element of the *Williams Packing* test had been met—that there was no alternative remedy available to *South Carolina* —and simply ignored the remaining two elements. Indeed, the opinion repeatedly stated that the *Williams Packing* analysis did not apply, and the Anti-Injunction Act was no bar to a suit when Congress had provided no other remedies.

■ In short, the *South Carolina v. Regan* decision can be regarded as holding that the scope of the Anti-Injunction Act was intended to parallel that of the familiar maxim of equity jurisprudence that one must show the unavailability of any remedies at law before one may petition for equitable relief. The Act prohibits courts from exercising their equitable power to enjoin whenever the taxpayer may utilize other remedies such as refund suits; at the same time, it does not prevent injured parties from seeking equitable relief in appropriate situations, nor does it withdraw from courts the jurisdiction to provide that relief when justice so requires. Therefore, once a party has persuaded a court that equity jurisdiction exists, the decision of whether to grant a preliminary injunction should be made according to normal standards governing the issuance of such relief.

Examining the facts of this case, the Court must initially determine whether equity jurisdiction should be exercised here. Since neither the Plaintiff nor the former officers dispute the validity or amount of the assessed liability, this is a situation in which payment by any of the parties followed by a refund suit would be an impractical and inadequate remedy. The parties' refusal to pay the tax and to eventually litigate the issues in a deficiency action would be equally inadequate to the Plaintiff since it would already have incurred its alleged irreparable harm. Also, since the IRS is attempting to seize assets of the officers, there is no practical possibility of refusing to pay the tax; the government is forcibly taking what it needs to satisfy the liability. The legal remedy suggested by one bankruptcy court—that the officers being personally assessed enjoin collection by filing personal bankruptcy petitions—is ludicrous here because these individuals are no longer in the employ of the Plaintiff. *See In re O.H. Lewis Co., supra.* Thus, we find that the Plaintiff has no other viable legal remedy through which to challenge the IRS' collection efforts and therefore this Court has the jurisdiction to provide equitable relief if the other criteria are also satisfied.

In deciding whether to grant a preliminary injunction, the factors to be considered are:

(1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the plaintiff has shown irreparable injury;

(3) Whether issuance of a preliminary injunction would cause substantial harm to others; and

(4) Whether the public interest would be served if the injunction were issued.

*Warner v. Central Trust Co., N.A.,* 715 F.2d 1121, 1123 (6th Cir.1983); *Martin-Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 564–65 (6th Cir.1982); *International Union v. Miles Machinery Co.,* 34 B.R. 683, 688 (E.D.Mich.1983). Upon the evidence, it is apparent that the Plaintiff has failed to pass the first step of the above test.

Ordinarily, the merits of a tax collection case depend on whether the government

has a right to receive from a certain taxpayer a certain amount of money as a tax. Since neither it nor its former officers dispute either that the amount of the assessment is correct or that the government has the statutory authority to proceed against Lutterbach and Stellema, the Plaintiff obviously loses upon this point. The Plaintiff thus urges us to re-define the merits of its claims as whether the government may collect the taxes by any means other than the one delineated in the plan. It points out that the plan calls for full payment of the tax debt and, although no payments have been made to date, the IRS has not sought collection from the Plaintiff. Unstated, but implicit in the Plaintiff's argument, is the assertion that the IRS first must attempt to collect the delinquent taxes from the company which incurred the liability, and only if those efforts prove fruitless should the government be allowed to collect from other parties.

■ Regardless of how creatively it frames the nature of its right to relief, the Plaintiff's position is legally untenable, for no matter how the question is put, the government has the statutory right to seek satisfaction from either the taxpayer or its ex-officers at the government's option. Section 6672(a) of the Internal Revenue Code, 26 U.S.C. § 6672(a), makes the latter right separate and distinct from the corporation's liability. *Spivak v. United States,* 370 F.2d 612 (2d Cir.1967), *cert. denied,* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); *Kelly v. Lethert,* 362 F.2d 629 (8th Cir.1966).

> The result of this section is to make the responsible officers equally liable with the corporation to the Government and it may proceed against either in the order best suited in its judgment to collect the tax. Therefore [the IRS] is not required to first try to satisfy the tax liability from the assets of the bankrupt corporation but may properly proceed in the first instance against [the individual officers].

*Hutchinson v. United States,* 559 F.Supp. 890, 894 (N.D.Ohio 1982), *quoting Van Westerhuyzen v. United States,* 407 F.Supp. 334, 335 (D.Minn.1975) (citations omitted).

■ Second, even were we to accept the Plaintiff's proposition, the outcome would be the same. The Plaintiff is correct that a confirmed plan binds the creditors of the estate. 11 U.S.C. § 1141(a); *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). This doctrine has been held to apply to the IRS as it would to other creditors of the estate. *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546 (Bankr.E.D.Mich. 1984); *appeal docketed,* 85–CV–10015–BC (E.D.Mich.1985); *In re Driscoll's Towing Service, Inc., supra; In re Gurwitch,* 37 B.R. 513, 10 C.B.C.2d 722 (Bankr.S.D.Fla. 1984). However, while the confirmed plan provides for eventual payment of the tax claim by the Plaintiff, nothing in that plan precludes the IRS from pursuing independent statutory rights contained in the Internal Revenue Code. If, as in *In re Driscoll's Towing Service, Inc.,* the Plaintiff's plan had contained a waiver by creditors of the estate of all personal liability of the responsible parties of the debtor, this Court might have reached a different conclusion. In *In re St. Louis Freight Lines, Inc., supra,* for example, the debtor's confirmed plan expressly provided for the payment of post-petition administrative claims for taxes only. This Court held that even though the IRS normally is entitled to apply payments received from a bankrupt company in any manner it wishes, the IRS in that case could not apply such payments to post-petition interest or penalties, since the plan provided for payment of post-petition taxes only, and the IRS had neither timely objected to the confirmation of the apparently deficient plan nor timely appealed the confirmation order. In *In re Gurwitch, supra,* the government sought to collect a corporation's tax liability from a responsible officer of the company; the debtor in that case was the officer who had filed a personal Chapter 11 petition and had accounted for payment of all corporate-related tax claims in his confirmed plan. There, the bankruptcy court rightly held that the IRS could not ignore the debtor's provisions for repayment.

None of the above situations is present here. Ultimately, the Plaintiff's proposed characterization of the merits resolves itself down to the same issues regarding the government's right to collect. In order to permanently limit the IRS to collection according to the terms of the plan, it would be necessary to prove either that the IRS had no right or authority to collect from the former officers or that the government had, in some way, waived or otherwise lost its rights to do so. There is simply no basis for either proposition in this case. The Plaintiff has failed to convince us that it has a probability—or for that matter, any realistic hope—of obtaining permanent relief from the collection efforts of the IRS. Therefore, the Plaintiff's motion was denied.

Although the above analysis makes it unnecessary at this juncture to undertake a detailed evaluation of the other elements which must be satisfied before an injunction might issue, the Court does note that the Plaintiff appears to have made a showing of irreparable harm. It argues that if the government succeeds in collecting from the officers, they will demand that Mr. Dore honor his indemnity agreements. Inasmuch as the Plaintiff relies upon the ability of Mr. Dore to stand as a personal guarantor of construction bonds for projects performed by the Plaintiff, the ability of the Plaintiff to continue its operations would be impaired by the enforcement of the indemnification agreements. Also, as Mr. Dore's personal involvement in the business of the Plaintiff is essential to its success—besides being the chief operating officer, he is solely responsible for bidding on construction projects—any time he spends in court in the indemnification action would detract from the likelihood of successful performance of the Plaintiff's plan of reorganization.

Finally, this finding of injury should not be misread as an acceptance of those cases which followed the holding of *Bostwick, supra.* The Court agrees with the view expressed in *In re Beckers Motor Transport, supra* that had Congress intended to allow a special bankruptcy exception to the broadly worded Anti-Injunction Act it would have expressly included that exception in the statute or in the Bankruptcy Code. *See In re Pressimone, supra; In re County Wide Garden Center, Inc., supra.*

In conclusion, we find that the Plaintiff has failed to show that the circumstances of this case justify the granting of a preliminary injunction; therefore the motion for a preliminary injunction was DENIED.