**In re ACTIVE STEEL ERECTORS, INC., Debtor.**

Bankruptcy No. 3-82-00251.

United States Bankruptcy Court, D. Alaska.

Oct. 16, 1985.

Thomas J. Yerbich, Yerbich & Associates, Anchorage, Alaska, for debtor.

David T. LeBlond, Asst. Atty. Gen., Anchorage, Alaska, for State of Alaska, Employment Sec. Div.

## OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

This matter is before the Court on the debtor's motion pursuant to § 505[1] of the Bankruptcy Code to determine the state unemployment tax rate that is applicable to the debtor. For the reasons hereinafter stated the court finds that the State of Alaska is precluded by the terms of the debtor's plan and by the Supremacy Clause, Art. VI of the United States Constitution, from assessing and collecting from the debtor the penalty rate provided by AS 23.20.280.

## FACTS

On November 22, 1982, Active Steel Erectors, Inc. ("debtor") filed a Chapter 11 petition under the Bankruptcy Code. The Alaska Department of Labor, Employment Security Division ("ESD"), is the agency charged by law with the responsibility of administering the Alaska Employment Security Act. On August 29, 1984, an order was entered confirming the debtor's Chapter 11 plan. The confirmed plan was accepted by ESD and, as a part of the plan, ESD waived all penalties for non-payment and/or late filing.

At the time the debtor filed its Chapter 11 petition there were unpaid state unemployment tax contributions which were past due. ESD has filed a claim for $91,-942.56. The debtor has paid all unemployment taxes which have accrued since the filing of the Chapter 11 petition.

On or about December 7, 1984, ESD notified the debtor that its tax rate for 1985 was to be the penalty C rate which is 5.4%, the highest rate provided by law. By the terms of the State statute, the penalty rate cannot go into effect until at least six

1. All references to the Code are to the Bankrupt-

cy Reform Act of 1978, as amended in 1984, 11

months after a default has taken place.[2] The rate assignment was based on the debtor's failure to pay employment security taxes prior to its filing of the Chapter 11 petition. The debtor timely sought review of the determination. Debtor's application for review and redetermination was denied and a timely appeal was taken to the Commissioner of Labor. The Commissioner found that the penalty C rate was the appropriate rate and that "the fact that the tax imposed is burdensome" to the debtor was not grounds for a more favorable tax rate. Therefore, on May 10, 1985, the Commissioner denied the appeal.

## LAW

█ The issue presented is whether the State of Alaska is precluded by either the provisions of the confirmed plan or the Supremacy Clause of the United States Constitution from raising the debtor's unemployment tax rate to the highest rate permitted by state law because of the failure of the debtor to make certain tax payments prior to filing its Chapter 11 petition.[3] Section 505 of the Code provides in pertinent part that the bankruptcy court:

> may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Section 1129(a)(9)(C)[4] of the Bankruptcy Code provides that an employment tax on wages shall be dealt with as follows in a Chapter 11 plan, absent agreement to a different treatment:

> [T]he holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

Sections 502(i), 507(a)(7), and 1141(d) of the Bankruptcy Code when read in conjunction with each other provide in pertinent part that a "claim that does not arise until after the commencement of the case for [an unemployment] tax entitled to priority under section [507(a)(7)[5]] of this title shall be determined, and shall be allowed ... the same as if such claim had arisen before the date of the filing of the petition" and shall be discharged by the confirmation of a plan whether or not a claim is filed, or allowed, or the holder of such claim has accepted the plan.

Pursuant to subsections (b) and (c) of § 1141 of the Code the confirmation of the plan has vested all property of the estate in the debtor and the property dealt with in the plan, subject to certain provisions not relevant here, is free and clear of all claims and interests of the creditors except as otherwise provided in the plan or in the order of confirmation. Thus control of the property upon confirmation passes from the debtor in possession back to the debtor in its capacity as a debtor.

The Commissioner of Labor in his opinion denying debtor's appeal refers to the rate

---

U.S.C. § 101 et seq.

**2.** Under the state statute the penalty rate applies as of January 1 to employers who: (1) have been subject to the Employment Security Act for at least six consecutive calendar quarters ending immediately prior to January 1 of the given year; (2) have defaulted as to payment for a quarter ending prior to July 1 of the year preceding the given year; and (3) have failed to cure the default prior to August 30 of the year preceding the given year or within 10 days after notice of the default has been given by the State, whichever is later. Thus, the penalty rate is not imposed until the debtor has been in default for at least six months. *See* AS 23.20.280 and 23.-20.310.

**3.** It is clear from the Commissioner of Labor's opinion that Employment Security contributions are treated as a tax by the Department of Labor and that the rate prescribed by AS 23.20.-280 is a penalty. Additionally, the Commissioner's proposed Conclusions of Law state "the contributions required under the Alaska Employment Security Act are taxes...."

**4.** The statute presently contains a typographical error and 507(a)(6) must be read as a reference to 507(a)(7).

**5.** *See* footnote 4, *supra*.

as being a " 'penalty' C rate". The penalty rate, even though applied to non-bankruptcy debtors as well as bankruptcy debtors, is still in conflict with the provisions of the Bankruptcy Code when applied to a debtor with a confirmed plan.[6] Congress has specified in § 1129(a)(9)(C) a means by which a tax creditor can be fully satisfied by a debtor. Since the taxes in question must be fully paid in value as of the effective date of the plan, § 1129(a)(9)(C) when read in conjunction with § 1141(d)(1) supersedes any conflicting provisions of the state statutes. *See* the Supremacy Clause, Art. VI of the United States Constitution. Congress has legislated a provision that is the equivalent of payment as of the date the bankruptcy petition was filed and that discharges the debt by virtue of the confirmation of a plan. Thus, the state statutory scheme must yield to the paramount federal law.

The taxes which the State is attempting to collect under AS 23.20.280(c) (the highest

rate penalty provision) simply constitute an addition or penalty which relates to the pre-petition unemployment taxes of the debtor. Even if otherwise permissible they would be discharged pursuant to § 1141(d)(1) upon the confirmation of a debtor's plan, and any lien claim for same would be voided by § 1141(c).[7] Moreover, pursuant to § 1141(a) of the Code, the State is bound by the terms of the debtor's plan and the plan expressly provides that "any and all penalties for non-payment, late payment and/or late filing" are to be waived.

It is well settled that state law must not be allowed to pervert or override the distributive provisions of the bankruptcy laws. *Elliott v. Bumb*, 356 F:2d 749 (9th Cir.1966), *cert. denied* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *see also Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971); *In re Anchorage International Inn, Inc.*, 718 F.2d 1446 (9th Cir.1983).[8] As indicated

---

**6.** The debtor has argued in its briefs for an interpretation of the State statute which would avoid any conflict with the Code. It is necessary, however, to reach the conflict issue, since the Court finds the debtor's construction of the State statute unpersuasive. Although not cited by the debtor, AS 23.20.250(c) lends support to this Court's conclusion that the ESD's penalty must yield to the provisions of the Bankruptcy Code. Subsection (c) of AS 23.20.250 provides that when there is a confirmed plan under Title 11 of the United States Code (Bankruptcy), then the "contributions that are or become due are entitled to the priority provided under that Act, as amended."

The debtor also asserts that the State has engaged in discriminatory treatment that is prohibited under § 525 of the Code; however, the facts of the instant case do not appear to fall within a literal reading of § 525. *See In re A.C. Williams Co.*, 51 B.R. 496, 500 (Bkrtcy.N.D.Ohio 1985).

**7.** In the instant case ESD has filed its pre-petition claim as a priority claim and not as a lien claim. No claim has been filed regarding ESD's demand that the debtor pay the penalty rate. Although State law provides in AS 23.20.200 that ESD's claims can become a lien upon the debtor's property when filed in the proper recording district, no lien claim is being asserted by ESD. Thus, the fact that the bankruptcy court recognizes many state created liens has no application to the instant case. *See In re Anchorage*

*International Inn, Inc.*, 718 F.2d 1446 (9th Cir. 1983).

**8.** Although *Elliott* has been given a more narrow reading in *Anchorage International Inn*, the *International Inn* case recognized that the "bankruptcy law does override state created priorities that apply only in the event of bankruptcy...." *Id.* at 1452.

It is only in the event of the confirmation of a Chapter 11 plan that the penalty rate statute comes into conflict with § 1129(a)(9)(C) of the Code in its attempt to coerce a super-priority over creditors of the same class. The penalty statute has no similar force and effect independent of the bankruptcy proceeding since absent a confirmed plan the state would compete with all other creditors on an equal footing as an unsecured creditor in an attempt to collect the penalty rate. Moreover, the Ninth Circuit in *Anchorage International Inn* expressly recognized the invalidity of a tax penalty because of "the bankruptcy law's strong policy against enforcing penalties unrelated to pecuniary loss since such claims penalize creditors...." *In re Anchorage International Inn* at 1451 n. 5. The policy against such penalties is reflected in § 507(a)(7)(G) of the Code which denies priority to a penalty that is not compensation for actual pecuniary loss and in § 726(a)(4) which subordinates in a Chapter 7 case any penalty (that is not compensation for actual pecuniary loss) to

above, to the extent the penalty rate exceeds the rate that would otherwise be imposed had the debtor paid in cash its pre-petition taxes, it is discharged by § 1141.[9] Such a direct conflict with the Bankruptcy Code requires the state law to yield. *See In re Petite Auberge Village, Inc.*, 650 F.2d 192 (9th Cir.1981).

The state certainly has a legitimate goal in inducing compliance with its unemployment tax laws by imposing a penalty rate on delinquent parties. The unemployment fund serves a very worthy and necessary social goal. The fund helps to mitigate the consequences of unemployment by its payments to workers who are unable to find employment.[10] Thus, the holding of this case is a very narrow one. Only a debtor with a confirmed Chapter 11 plan whose plan in conjunction with the provisions of § 1141 of the Code discharges any tax penalty that is asserted in contravention of § 1129(a)(9)(C) will be able to avoid the penalty rate. When § 1129(a)(9)(C) fully satisfies a tax creditor with the present value of its claim, the legislative policies of Congress in encouraging the rehabilitation of distressed businesses must outweigh the needs of a state to extract its penalty. In an extreme case the operation of a statute such as Alaska's, if permitted to be utilized in contravention of the policies herein enunciated, would act as a club to force a debtor to treat preferentially a state tax collector

in violation of the principle of equality of distribution which underlies our bankruptcy laws. In the instant case, the debtor estimates that the net effect of the penalty rate during the six year period of the plan under § 1129(a)(9)(C) is to increase its taxes by $66,948.00 over what they would otherwise be. Under the ESD's view of the law, the only way to avoid the penalty is to immediately pay the pre-petition taxes. As the debtor argues, the position of ESD is a blatant attempt to coerce the debtor into granting ESD a super-priority over other creditors—a priority not granted ESD under the Bankruptcy Code. Thus, the state statute relied upon by ESD is contrary to federal bankruptcy law in its application to the instant case and therefore must yield to the paramount law. *See Elliott v. Bumb, supra* at 755.

Both parties cite *In re Pine Knob Investment*, 20 B.R. 714, 7 C.B.C.2d 281, (Bkrtcy. E.D.Mich.1982); however, other than establishing that an employment security contribution is a tax, *Pine Knob* does not shed any light on the central issue in the instant case.[11] *Pine Knob* does not discuss a post-confirmation situation nor does it appear to deal with a penalty rate. More applicable is *In re Gurwitch*, 37 B.R. 513 (Bkrtcy.S.D. Fla.1984) which held that the Internal Revenue Service was bound by the terms of the debtor's Chapter 11 plan as the exclu-

---

all other claims except claims for post-petition interest.

9. It cannot reasonably be argued that the penalty portion of the rate is compensation for actual pecuniary loss. Since the Chapter 11 plan provides for payment of the pre-petition ESD taxes, any post-petition collection costs would be de minimus.

10. The purpose of Alaska's Employment Security Act is to alleviate "[e]conomic insecurity due to involuntary unemployment ... by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment, from which benefits may be paid for periods of involuntary unemployment." AS 23.20.010. The tax rates are set in a manner to protect the solvency of the fund. AS 23.20.020. Studies are conducted to allocate the risk of unemployment by a rating system that allocates a higher rate to

those employers with a higher turnover in employees. Employers with higher turnovers impose a greater demand upon the fund. *See* AS 23.20.180 and 23.20.290; Annot., 163 A.L.R. 1148 (1946). The threat to the insolvency of the fund is alleviated under the facts of the instant case by the special treatment accorded unemployment taxes by the Bankruptcy Code and the debtor's plan.

11. *In re A.C. Williams Co.*, 51 B.R. 496 (Bkrtcy. N.D.Ohio 1985) is also not dispositive of the issue in the instant case, since the new rate in *Williams* was based upon the pre-petition *safety* record of the debtor. The Court in *Williams* noted that:

In fact the higher rate levied has no relation to the filing of bankruptcy by the debtors, or pre-petition debts, dischargeable or not. The higher rate is related to the debtors' pre-petition experience of safety, or lack of it, in the workplace.

sive means of collecting a tax penalty from the assets of the debtor.[12]

## CONCLUSION

For the reasons stated herein ESD is precluded from imposing the penalty tax rate upon the debtor. There is no direct conflict between the state statute in question and the Bankruptcy Code until a plan is confirmed. Under the operation of the state statute up until the confirmation of a plan, a debtor-in-possession is treated like any other employer.[13] If a Chapter 11 debtor wishes to avoid the penalty, a plan that discharges the penalty must be confirmed. To hold otherwise would be a speculative and unwarranted intrusion on the State's tax collecting powers. Until such time as a plan is confirmed there is no way of knowing whether § 1129(a)(9)(C) will become applicable.[14] Moreover, a contrary ruling would make Chapter 11 an even more attractive haven for those debtors who merely seek to delay their inevitable demise.

An order will be entered in accordance with this opinion.

---

**12.** There is authority, however, that a tax collector may not be barred from collecting a tax from a *non-debtor* even though the tax was to be fully paid through a confirmed plan. *See United States v. Huckabee Auto Co.,* 46 B.R. 741 (M.D.Ga.1985); *In re Dore & Associates Contracting, Inc.,* 45 B.R. 758, 12 B.C.D. 719 (Bkrtcy. E.D.Mich.1985).

**13.** There is no federal policy precluding the collection of tax penalties as a cost of administration of a debtor-in-possession. *See* § 503(b)(1)(C) of the Code. Although it could be argued that the ESD's penalty rate tax includes a non-compensatory tax penalty for a pre-petition debt that is governed by Section 507 rather than Section 503, it must be recognized that the penalty rate provision is precluded by federal law only when it is in direct conflict with the provisions of the bankruptcy laws and does not have an effect and purpose independent of bankruptcy proceedings. *See Anchorage International Inn, Inc.,* 718 F.2d 1446, 1450 n. 3 and 1452 (9th Cir.1983); *In re Petite Auberge Village, Inc.,* 650 F.2d 192 (9th Cir.1981). *See also* n. 14, *infra.*

**14.** Section 1121 of the Code anticipates that a debtor should be able to file a plan within 120 days after filing its petition and secure the requisite acceptances within 180 days after the petition is filed. If a debtor, unlike the debtor in the instant case, was assessed the penalty rate prior to the expiration of the 180 days period, such a debtor may wish to petition the court to segregate the penalty rate excess in a special account pending a determination of whether a plan will be confirmed. A rebate of the penalty might be an appropriate disposition if a plan is expeditiously confirmed. It could be argued, however, that since the penalty rate does not go into effect until at least six months after a default has occurred, that any remission short of actual confirmation would be an unwarranted encouragement of debtors with pre-petition cash flow problems to defer paying the employment security tax. If a debtor believed it could defer payment of the taxes for more than six months and escape payment of the penalty as an administrative expense prior to confirmation, it might elect to divert its pre-petition cash to debts other than employment security taxes. The resolution of the issue is perhaps best left to a case by case determination.

A debtor with a large payroll and a very small pre-petition delinquency could be faced with an exorbitant penalty as an administrative expense depending upon when the debtor's petition was filed. For instance, in *In re Skoglund Company, Inc.,* No. 3–84–00123 (Bkrtcy.Alaska), the debtor-in-possession in a Chapter 11 has alleged that the effect of the penalty rate in the 1985 calendar year will be to increase the debtor's taxes by approximately $65,500.00 because of the non-payment of approximately $5,172.00 in pre-petition employment security taxes. In *In re Commonwealth, Ltd.,* No. 3X–84–00222 (Bkrtcy.Alaska), a Chapter 11 case filed in September 1984, the debtor-in-possession asserts that the effect of the penalty rate will be to increase the debtor's employment security taxes by $59,000.00 for 1985 because of the non-payment of approximately $9,654.00 in pre-petition taxes. An administrative penalty that exceeds the amount of a pre-petition default may well call for segregation and cancellation in the event a plan is subsequently confirmed. *See* § 105(a) of the Code. Thus in *Skoglund* and *Commonwealth* the Court has entered orders on this date which afford the parties an opportunity to further address these issues.