**In re DRAGGOO ELECTRIC COMPANY, INC., Debtor.**

**DRAGGOO ELECTRIC COMPANY, INC., Plaintiff,**

v.

**STATE OF INDIANA EMPLOYMENT SECURITY DIVISION, Defendant.**

**Bankruptcy No. 83–30773.
Adv. No. 85–3043.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Feb. 3, 1986.

Mark A. Warsco, Holleran & Trexler, Fort Wayne, Ind., for debtor/plaintiff.

Linley E. Pearson, Atty. Gen., Robert K. Robisch, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

## ORDER

ROBERT K. RODIBAUGH, Chief Judge.

This matter is before the court on the debtor's Complaint for Injunctive Relief filed on April 29, 1985. A pretrial conference was held on June 19, 1985. The Court was advised at that time that the parties would stipulate the facts. Following a briefing period, the matter was taken under advisement on October 18, 1985.

## FACTS

Draggoo Electric Company, Inc., (Draggoo) filed for relief under Chapter 11 of the Bankruptcy Code on September 30, 1983. Draggoo's bankruptcy schedule lists the Indiana Employment Security Division (IESD) as a priority creditor, said debt resulting from mandatory unemployment contributions. The debt owed the IESD, at the time of filing, was $10,799.76. Draggoo's plan of reorganization was confirmed by the court on August 9, 1984. Under the terms of the plan the debtor proposes to pay the IESD its full pre-petition indebtedness, plus interest. Draggoo's post-petition unemployment contributions are fully paid for the years 1983 and 1984.

The IESD calculates each employer's contribution rate. In order to do so the IESD maintains a separate "experience account" for each employer. Unemployment contributions made by an employer are credited to that employer's experience account, and any unemployment claims paid on behalf of an employer are deducted from that employer's experience account. Based upon the balance in Draggoo's experience account, Draggoo would be entitled to a 1985 non-penalty contribution rate of 2.4%.

Based upon a 1985 amendment to the Indiana Code, however, the IESD may charge a contribution rate of 5.4% to any employer who is delinquent in paying his unemployment contributions. Indiana Code 22-4-11-2.

In October, 1984, the IESD notified Draggoo that Draggoo's contribution rate would be 2.7% unless all pre-petition debts to the IESD were paid within ten days. In January, 1985, the IESD notified the debtor that it must make contributions at a rate of 5.4%. The parties have stipulated that the sole reason that the IESD required a contribution rate greater than 2.4% is the existence of the outstanding pre-petition liability to the IESD.

Draggoo filed its complaint for injunctive relief to prevent the IESD from assessing Draggoo at a penalty rate based upon pre-petition debts. In its brief Draggoo asserts that its 1985 contribution rate should be 2.4%. It also asserts that the IESD's notices to the debtor, and attempt to charge Draggoo a penalty rate, constitute violations of the automatic stay of 11 U.S.C. § 362. Draggoo asks the court to enjoin the IESD from charging Draggoo a contribution rate in excess of 2.4% for 1985 and to enjoin the IESD from charging Draggoo a contribution rate in subsequent years in excess of the rate Draggoo would be charged based upon the balance in Draggoo's experience account without regard to any unpaid pre-petition liabilities.

## DISCUSSION AND CONCLUSIONS

Section § 362(a) creates an automatic stay against any act to collect pre-petition debts. It prohibits:

> (a)(6) any act to collect, assess or recover a claim against the Debtor that arose before the commencement of the case under this Title.

11 U.S.C. § 362(a)(6).

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. 11 U.S.C. § 362, Legislative History.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly procedure under which all creditors are treated equally. *Id.*

The debtor argues that the actions of the IESD constitute violations of the automatic stay. The first notice sent by the IESD provides that the debtor will be assessed a merit rate delinquency unless all delinquent contributions, penalties, and interest are paid within ten days of the notice. A second notice provides that if the assessment of the IESD is not protested in writing or paid by the date designated, then the assessment shall become final, and the IESD will file with the Circuit Court of Elkhart County a warrant directing the Sheriff to levy the property of the employer.

The debtor argues that each of these notices imposes a penalty upon Draggoo in an attempt to collect on a pre-petition debt. The debtor maintains that these notices, as well as the imposition of the penalty itself, constitute violations of the stay.

In support of its position the debtor cites *In re Geffken,* 43 B.R. 697 (Bkrtcy.N.D.OH 1984). In *Geffken,* the Ohio Industrial Commission attempted to enjoin the debtor from the further operation of his business for failure to pay pre-petition Workmen's Compensation premiums. The Bankruptcy Court held that the state was pursuing a pecuniary interest in violation of the automatic stay. *Id.* at 701.

In *Geffken* the Ohio Industrial Commission argued that its action against the debtor was excepted from the automatic stay under 11 U.S.C. § 362(b)(4) which provides that the filing of a petition does not operate as a stay

> (4) ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

The *Geffken* court rejected this argument. It noted that, in light of the legislative history of § 362, courts have drawn the distinction between governmental actions which are aimed at advancing a pecuniary interest of the government and those actions which actually affect health, welfare, morals, and safety. *Id.* at 700. The former actions are stayed under 11 U.S.C. § 362(a)(1); while the latter are excepted

pursuant to 11 U.S.C. § 362(b)(4). The court concluded that it had no difficulty in concluding that the actions of the Ohio Industrial Commission were subject to the automatic stay. The court stated:

It appears to this court that O.R.C. section 4123.79 was enacted for the primary purpose of enforcing the state's pecuniary interest. It threatens an employer with the ultimate sanction of terminating business operations should the employer become delinquent in paying premiums into the workers' compensation fund. If this court were to let the Commission proceed with its action, then the Commission could virtually coerce the debtor into paying his pre-petition premiums. In such case the Commission would have obtained a preference over other creditors. *Id.* at 701.

This court agrees with the holding and rationale of the *Geffken* court. Just as the Ohio Industrial Commission, in *Geffken*, attempted to enforce the state's pecuniary interest by coercing the debtor into paying his pre-petition premiums, the Employment Security Division would be attempting to enforce its pecuniary interest in sending notice informing the debtor that the only way to avoid a penalty rate on post-petition taxes is to immediately pay pre-petition taxes.

These actions by the IESD would clearly not be excepted from the automatic stay by 362(b)(4) which allows a governmental unit to enforce its police or regulatory powers. This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate. 11 U.S.C. § 362, Legislative History. See also, *In re Organized Maintenance, Inc.,* 47 B.R. 791, 795–96 (Bkrtcy.E.D.N.Y.1985); *In re Farmer's Markets, Inc.,* 36 B.R. 829, 833 (Bkrtcy.E.D.Cal.1984).

■ After carefully reviewing the case record, however, the court finds that no evidence was introduced that the IESD sent notices to the debtor, or assessed a penalty rate, prior to confirmation of the plan.[1] Once the plan is confirmed, arguments that the IESD is acting in violation of the stay are generally no longer applicable.

The specific instances in which a stay will or will not be effective are listed in 11 U.S.C. § 362(a) and (b). Section 362(c) outlines the duration of a stay already in operation:

(1) the stay of an act against property of the estate under section (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; and

(C) if the case is a case under Chapter 7 of this title concerning an individual or a case under Chapter 9, 11, or 13 of this title, the time a discharge is granted or denied.

■ The automatic stay of section 362 remains in effect while a Chapter 11 plan is pending confirmation. Upon the plan's confirmation, and simultaneous discharge of debt under 11 U.S.C. § 1141(d), however, the automatic stay terminates pursuant to § 362(c). *In re Paradise Country Club,* 31 B.R. 613 (Bkrtcy.Colo.1983). Since confirmation of a chapter 11 plan has the dual effect of revesting the debtor with title to its property and discharging the debtor from all dischargeable pre-petition debts, there is no further application of the automatic stay subsequent to confirmation. See, *In re Paradise Valley Country Club,* 31 B.R. at 613.

Even though there is no evidence that the IESD violated the automatic stay, however, the post confirmation actions of the IESD were in violation of other provisions

---

1. The plan was confirmed in August, 1984. The first piece of evidence offered by the debtor consisted of a notice sent in October, 1984 by the IESD.

of the Code. The debtor's plan of reorganization was confirmed by this court in August, 1984. The plan proposes to pay the IESD its full pre-petition indebtedness, plus interest. This proposal is in conformance with 11 U.S.C. § 1129(a)(9)(C)[2] which provides that an employment tax on wages shall be dealt with as follows in a chapter 11 plan, absent agreement to a different treatment:

> The holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

Thus, Congress has specified in § 1129(a)(9)(C) a means by which a tax creditor can be fully satisfied by a debtor. Additionally § 1141(d)(1)(A) of the Bankruptcy Code provides that the confirmation of the plan discharges the debtor from claims relating to the pre-petition indebtedness. See, *In re Active Steel Erectors, Inc.*, 13 B.C.D. 806, 53 B.R. 851 (Bkrtcy. Alaska 1985).

▪ Throughout its brief IESD cites the Indiana Code as authority for its position. It is, however, well settled that state law must not be allowed to pervert or override the distributive provisions of the bankruptcy laws. *Id.* at 807, 53 B.R. at 852–53. A direct conflict with the Bankruptcy Code requires the state law to yield. *Id.* at 808, 53 B.R. at 854.

▪ As the debtor argues, the position of the IESD is an attempt to coerce the debtor into paying IESD its pre-petition debt. In doing so the debtor would be granting IESD a superpriority status, a status not granted to IESD under the Bankruptcy Code. *Id.* This would clearly undermine the creditor protection which had initially been afforded by the automatic stay, that process which provides an orderly procedure under which creditors are treated equally. 11 U.S.C. § 362, Legislative History. Following confirmation of the plan it would be in conflict with the distributive provisions of the bankruptcy laws contained in § 1129(a)(9)(C) and § 1141. *In re Active Steel Erectors*, 13 B.C.D. 806, 53 B.R. 851.

Finally, the actions of the IESD are in violation of 11 U.S.C. § 1141(a) which provides that the provisions of a confirmed plan bind the debtor and the creditors. The attempt of IESD to collect under the highest penalty rate provision constitute an addition or penalty which relates to the pre-petition employment taxes of the debtor. Such actions violate the terms of the confirmed plan which specify how the pre-petition taxes shall be paid. See, *In re Active Steel Erectors*, 13 B.C.D. 807, 53 B.R. at 852–53.[3]

In summary the court concludes that the actions of the IESD in sending notices to the debtor regarding its penalty rate, and in assessing a penalty rate based on pre-petition indebtedness, are in conflict with distributive provisions of the Bankruptcy Code and the terms of the confirmed plan. Had the IESD's action occurred prior to confirmation of the plan, said actions would also constitute violations of the automatic stay. As indicated above, however, no evidence was introduced indicating that the IESD acted prior to confirmation.

## COSTS AND ATTORNEY FEES

▪ In its Complaint for Injunctive Relief, the debtor did not request costs and attorney fees. In its brief, however, the debtor asks the court to enter judgment that the court finds the IESD in civil con-

---

**2.** The statute presently contains a typographical error, and 507(a)(6) must be read as a reference to 507(a)(7). *In re Active Steel Erectors, Inc.*, 13 B.C.D. at 807, 53 B.R. at 852.

**3.** The court in *In re Active Steel Erectors, Inc*, held that the state penalty rate is in conflict with the Bankruptcy Code when applied to a debtor with a confirmed plan. This court cites the case as it relates to that holding. This court, however, does not adopt the court's rationale or holding to the extent that it concluded that the Employment Security Division may assess a post-petition penalty rate based on pre-petition indebtedness until the time that the plan is confirmed.

tempt and to order the IESD to reimburse the debtor for costs and attorney fees. This court, in the past, has awarded costs and attorney fees for willful violations of the automatic stay. See, *In the Matter of Holland,* 21 B.R. 681 (Bkrtcy.N.D.Ind. 1982). The court, under proper circumstances, would also consider awarding costs and attorney fees for a deliberate attempt to collect pre-petition debts, in contravention to the terms of a confirmed plan. The court notes, however, that in the instant case there were no cases, directly on point, to guide the IESD. Neither party, in its brief, cited a case dealing with the imposition of a penalty rate, upon a debtor, by the Employment Security Division. The sole case found by this court was decided after the briefing period for the parties had passed. Since there were no cases to guide the IESD regarding imposition of the penalty rate, the court declines to find that the IESD is in civil contempt for its actions. See, *In re Charter First Mortgage, Inc.,* 42 B.R. 380, 386 (Bkrtcy.D.Or.1984); *In re Bray Enterprises, Inc.,* 38 B.R. 75 (Bkrtcy. D.Vt.1984). Each party shall pay its own attorney fees.

SO ORDERED.