**In re HOLLYTEX CARPET MILLS, INC., Debtor.**

**HOLLYTEX CARPET MILLS, INC., Plaintiff–Appellee,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant–Appellant.**

No. 95–6175.

United States Court of Appeals, Tenth Circuit.

Jan. 9, 1996.

---

**1517**

§ 507(a)(7)(D).[2] The bankruptcy court approved Hollytex's reorganization plan on June 2, 1992. The plan provided for Hollytex's payment of the first-quarter 1991 contributions in full plus interest. *See* 11 U.S.C. § 1129(a)(9)(C). Hollytex has made the payments required by the plan.

The controversy here surrounds the effect of Hollytex's failure to timely remit the contributions to OESC as required by the Oklahoma Employment Security Act of 1980, Okla.Stat. tit. 40, §§ 1–101 to 9–104. Before the bankruptcy court confirmed Hollytex's reorganization plan, OESC notified Hollytex that its contribution rate for the 1992 calendar year had substantially increased over prior years. The increased rate was due in large part to Hollytex's failure to pay its first-quarter 1991 contributions by January 31, 1992, as required by section 3–107. On January 31, 1992, however, Hollytex was still in bankruptcy. The reorganization plan did not address the issue of Hollytex's liability for the increased rate.

Hollytex brought this adversary proceeding seeking a declaration that its reorganization plan discharged it from liability for the increased contribution rate. On cross-motions for summary judgment, the bankruptcy court held that Hollytex's failure to make timely payment as required by section 3–107 was a historical fact that OESC could use in computing Hollytex's post-bankruptcy contribution rate. It therefore granted summary judgment in favor of OESC. *Hollytex Carpet Mills, Inc. v. Oklahoma Employment Sec. Comm'n (In re Hollytex Carpet Mills, Inc.)*, 174 B.R. 615 (Bankr.W.D.Okla.1994). In an unpublished decision on appeal dated March 24, 1995, the district court reversed and granted summary judgment to Hollytex. It held that OESC's right to an increased compensation rate based on Hollytex's prepetition failure to timely remit its contribu-

V. Burns Hargis and Ross A. Plourde, of counsel, McAfee & Taft, Oklahoma City, Oklahoma, for Plaintiff–Appellee.

David T. Hopper, Oklahoma City, Oklahoma, for Defendant–Appellant.

Before EBEL, McKAY, and LUCERO, Circuit Judges.

McKAY, Circuit Judge.

This case presents an interesting question regarding the relationship between a debtor's reorganization under the Bankruptcy Code and its subsequent obligations to make unemployment compensation contributions to a state.[1] Hollytex Carpet Mills, Inc., filed for Chapter 11 bankruptcy on May 7, 1991. At the time it filed its petition, it owed the Oklahoma Employment Security Commission (OESC) $44,160.20 in unemployment compensation contributions for the first quarter of 1991, for which OESC asserted a claim in the bankruptcy case. *See* 11 U.S.C.

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

**2.** Amendments to the Bankruptcy Code effective October 22, 1994, recodified this section as § 507(a)(8)(D). Because this case commenced prior to that date, we cite to Code sections in existence prior to the amendments, as the bankruptcy and district courts did.

tions was a claim that was discharged by confirmation of the reorganization plan. The court also stated that if the increased rate were more properly viewed as a penalty for late payment, the penalty was also discharged by the plan's confirmation. Finally, the court held that the payment requirement under section 3–107 conflicted in this situation with the Bankruptcy Code and therefore must give way under the Supremacy Clause of the United States Constitution.

■ OESC appeals, and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. We review the grant of summary judgment de novo and apply the same legal standards as those applied by the bankruptcy and district courts, i.e., those set forth in Fed. R.Civ.P. 56(c). *Stat–Tech Int'l Corp. v. Delutes (In re Stat–Tech Int'l Corp.),* 47 F.3d 1054, 1057 & n. 1 (10th Cir.1995).

■ On consideration of the parties' arguments and the bankruptcy and district courts' decisions, we agree with the excellent and thorough analysis provided by the district court.[3] We therefore adopt the district court's decision as our own and attach it as an appendix to this opinion.[4]

Subsequent to the district court's entry of judgment in favor of Hollytex, the parties filed a stipulation in the district court stating that the amount of damages due Hollytex pursuant to the district court's decision was $76,461.29. Therefore, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED, and the case is REMANDED to the district court for enforcement of the stipulation regarding damages.

**3.** We do note that in discussing Hollytex's arguments in footnote 17, the district court cited *In re Gurwitch,* 37 B.R. 513 (Bankr.S.D.Fla.1984). That decision was reversed by the district court on the point in question, 54 B.R. 927 (S.D.Fla. 1985), and the Eleventh Circuit affirmed the reversal, 794 F.2d 584 (11th Cir.1986). We do not read the district court's decision here to have been affected in any way by the reversed *Gurwitch* decision.

**4.** OESC raises one argument on appeal that the district court's decision does not explicitly ad-

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

HOLLYTEX CARPET MILLS, INC.,
Plaintiff,

v.

OKLAHOMA EMPLOYMENT SECURITY COMMISSION,
Defendant.

Case No. CIV–95–48–R.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Plaintiff, Hollytex Carpet Mills, Inc.'s ("Plaintiff") appeal of a Bankruptcy Court's order granting summary judgment in favor of Defendant, Oklahoma Employment Security Commission ("Defendant"), in an adversary proceeding relating to Plaintiff's bankruptcy case under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").[1] This Court has jurisdiction to determine the issues presented in this appeal pursuant to 28 U.S.C. § 158(a) and 11 U.S.C. § 505(a)(1).

Because Plaintiff's case presents only issues of law to be decided by this Court, the Court reviews the determination of the Bankruptcy Court *de novo. In re Hesser,* 984 F.2d 345, 348 (10th Cir.1993); *Virginia Beach Federal Savings & Loan Assoc. v. Wood,* 901 F.2d 849 (10th Cir.1990). For the reasons discussed below, the Court reverses the Bankruptcy Court's decision, vacates its

dress—that the Secretary of Labor's certification of Oklahoma's unemployment compensation system precludes any violation of the Supremacy Clause in this situation. It is unclear whether this argument was raised in the district court, but in any event, we find it unpersuasive.

**1.** *See In re Hollytex Carpet Mills, Inc.,* Case No. BK–91–03483–BH; and *Hollytex Carpet Mills, Inc. v. Oklahoma Employment Security Commission,* Adv. No. 94–1233–BH, in the United States Bankruptcy Court for the Western District of Oklahoma.

judgment for Defendant, and gives judgment to Plaintiff. Fed.R.Civ.P. 56(c).

## I. *INTRODUCTION AND STATEMENT OF THE CASE.*

### A. *Undisputed, Material Facts.*

This is a dispute over an increased unemployment contribution rate which was assessed upon Plaintiff by Defendant under Article 3 of Oklahoma's Employment Security Act of 1980, 40 Okla.Stat. §§ 1–101 to 9–104, (the "OESA"), after Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The parties have stipulated to all the material facts in the case.

Plaintiff, a corporation, filed its petition with the Bankruptcy Court on May 7, 1991.[2] At the time Plaintiff filed its bankruptcy petition, Plaintiff owed Defendant $44,160.20 in unemployment compensation contributions for the first quarter of 1991.[3] *See* 40 Okla. Stat. 3–102(A). Accordingly, Defendant asserted a Seventh priority claim for these unpaid contributions in Plaintiff's bankruptcy case.[4] *See* 11 U.S.C. § 507(a)(7)(D).

During the course of the bankruptcy proceeding, and before confirmation of Plaintiff's plan of reorganization, Plaintiff received notice from Defendant of its contribution rate for the 1992 calendar year.[5] *See* 40 Okla. Stat. § 3–102(C). At that time, Plaintiff became aware that its contribution rate was set much higher than it had been in previous years.[6] The increase in Plaintiff's contribution rate was apparently caused, in large measure, by Plaintiff's failure to pay its first quarter–1991 contributions by the January 31, 1992 deadline established by section 3–107 of the OESA.[7]

Plaintiff's failure to pay its contributions by the statutory deadline caused an increase in Plaintiff's Benefit Wage Ratio for the 1992 year.[8] According to section 3–107 of the OESA, an employer's "Benefit Wage Ratio" for any particular year is calculated by dividing the employer's benefit wages for the past three (3), most recently completed calendar years by the total of the employer's taxable wages *upon which contributions have been paid by the employer on or before January 31 of that year,* for those three (3) years. The employer's Benefit Wage Ratio is then multiplied by the State Experience Factor[9] to determine the employer's contribution rate. *See* 40 Okla.Stat. §§ 3–107, 3–108, 3–109.

Because Plaintiff's first quarter–1991 contributions were not paid by the January 31, 1992 deadline, Plaintiff's Benefit Wage Ratio increased and, correspondingly, so did Plaintiff's contribution rate. Because an employer's Benefit Wage Ratio is calculated based upon a three-year contribution, wage and benefit history, Plaintiff's failure to pay its

---

2. *See* Motion for Summary Judgment Combined with Brief in Support, "Statement of Undisputed Facts" ("Plaintiff's Facts"), at ¶ 1.

3. *See* Answer of Defendant Oklahoma Employment Security Commission and Response to Motion for Summary Judgment Combined with Brief ("Defendant's Answer"), at ¶ 3.

4. *See* Plaintiff's Facts at ¶ 3.

5. *See* Plaintiff's Facts at ¶ 5; and Exhibit "A" to Plaintiff's Motion for Summary Judgment Combined With Brief in Support.

6. *Id.*

7. Originally set at approximately 1.8% of Plaintiff's taxable wages, Plaintiff's contribution rate was initially raised to 5.2%, but was later decreased to 3.9% because of certain earned credits given to Plaintiff by Defendant. *See* Order Granting Defendant's Motion for Summary Judg-

ment, Adv. No. 94–1233–BH, at p. 2 n. 3; Transcript of Proceedings Held Before the Honorable Richard L. Bohanon, United States Bankruptcy Judge for the Western District, on the 25th day of October, 1994, in Case No. 91–03283; Adv. No. 94–1233 (hereinafter "Transcript"), at pp. 3–4, lines 8–25, 1–14. Despite the decrease, however, Plaintiff's contribution rate remained approximately two times higher then it would have been if Plaintiff's first quarter–1991 contributions been paid by January 31, 1992.

8. *See* Transcript, at p. 15, lines 17–23.

9. The State Experience factor is calculated by subtracting the amounts credited to Oklahoma's Unemployment Compensation Fund (the "Fund") in the most recent past three (3) years from the total amount of benefits paid from the Fund in those years, and dividing the resultant sum by the total value of benefit wages of all employers, state-wide, for the same three (3) years. The final, resulting sum is then adjusted to the nearest 1%. 40 Okla.Stat. § 3–108.

contributions by the statutory deadline also caused increases in Plaintiff's contribution rates for the 1993 and 1994 calendar years.

Plaintiff's plan of reorganization (the "Plan") was confirmed by the Bankruptcy Court on June 2, 1992.[10] As required by the Bankruptcy Code, Plaintiff's Plan provided for payment of Plaintiff's first quarter–1991 contributions *in full*, with interest at the rate of eight percent (8%) per year, within six (6) years of the date of Defendant's assessment of the contributions.[11] *See* 11 U.S.C. § 1129(a)(9)(C). Defendant admits that Plaintiff has, to date, made all the payments required by the Plan, and has remained current on all post-petition contributions required under the OESA.[12]

Plaintiff protested the increased contribution rates assessed by Defendant pursuant to state law.[13] The protest has been stayed pending resolution of the legal issues presented in the instant proceeding.[14]

### B. Course of the Proceedings in the Bankruptcy Court.

Plaintiff filed its motion for summary judgment with the Bankruptcy Court on August 30, 1994, and Defendant responded on September 16, 1994. On October 25, 1994, the parties appeared on Plaintiff's motion before the Honorable Richard L. Bohanon, United States Bankruptcy Judge for the Western District of Oklahoma.[15] The Bankruptcy Court issued its opinion and order giving

judgment to Defendant on November 22, 1994.[16]

In their briefs and arguments before the Court, Plaintiff and Defendant focused upon the opinions and holdings contained in the six (6) existing cases which addressed the issues raised by the parties. Plaintiff relied upon *Michigan Employment Security Commission v. Wolverine Radio Co., Inc.,* 930 F.2d 1132 (6th Cir.1991); *Draggoo Electric Co., Inc. v. State of Indiana Employment Security Division,* 57 B.R. 916 (Bankr.N.D.Ind. 1986); and *In re Active Steel Erectors, Inc.,* 53 B.R. 851 (Bankr.D.Alaska 1985), and argued that Defendant's assessment of a post-petition increase in Plaintiff's contribution rate constituted a claim for a "penalty" for Plaintiff's failure to pay its pre-petition contribution debt by the statutory deadline. Plaintiff argued that such a claim for penalty is not entitled to priority under section 507(a)(7)(G) of the Bankruptcy Code and was effectively discharged upon the Plan's confirmation.[17] Thus, Plaintiff asserted no increased contribution rate could be assessed by Defendant under the Bankruptcy Code.

Defendant, however, relied upon *In re Primrose Bedspread Corp.,* 67 B.R. 659 (Bankr.D.N.J.1986); *Ravenna Industries, Inc. v. Ohio Bureau of Worker's Compensation,* 51 B.R. 496 (Bankr.N.D.Ohio 1985); and *In the Matter of Pine Knob Investment,* 20 B.R. 714 (Bankr.E.D.Mich.1982), and argued, first, that the increased contribution rate which resulted from the application of section 3–107 of the OESA to Plaintiff was

**10.** Plaintiff's facts at ¶ 4.

**11.** *Id.*

**12.** *See* Transcript, at p. 15, lines 23–25.

**13.** *See* 40 Okla.Stat. § 3–102(D).

**14.** Plaintiff's Motion for Summary Judgment Combined with Brief in Support, at p. 2.

**15.** *See* Transcript.

**16.** In its opinion, the Bankruptcy Court notes that Defendant did not make any cross-motion for summary judgment. However, since the parties agreed that the case presented only issues of law, the Bankruptcy Court treated Defendant's

answer and response to Plaintiff's motion as a cross-motion for summary judgment. *See* Order Granting Defendant's Motion for Summary Judgment, Case No. BK–91–03283–BH; Adv. No. 94–1233–BH, at p. 1, n. 1, citing, 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (1983); *Dickeson v. Quarberg,* 844 F.2d 1435, 1444–45 (10th Cir.1988).

**17.** *See* Plaintiff's Motion for Summary Judgment Combined with Supporting Brief, at pp. 3–5. *See also,* 11 U.S.C. §§ 1129(a)(9)(C), 1141(d)(1); *In re Gurwitch,* 37 B.R. 513, 515 (Bankr.S.D.Fla. 1984) (section 1129(a)(9)(C) does not permit a taxing authority to collect additional penalties in connection with its priority claim after the order confirming a Chapter 11 plan has become a final order).

not a claim for "penalty," but merely one negative experience factor of the many experience factors which were considered when Defendant calculated Plaintiff's Benefit Wage Ratio. Second, Defendant contended that the Bankruptcy Code permits the utilization of pre-petition experience factors in determining contribution rates for reorganized debtors, such as Plaintiff, following confirmation of Chapter 11 plans.[18] Defendant, therefore, contended that it was legally entitled to consider Plaintiff's failure to pay its first quarter–1991 contributions by the January 31, 1992 deadline, as a negative experience factor when determining Plaintiff's post-confirmation contribution rates.[19]

After hearing the parties arguments and considering the cited cases, the Bankruptcy Court agreed with Defendant's position. Noting that Plaintiff's contribution rate was calculated based upon statutorily set, facially non-discriminatory experience factors, the Bankruptcy Court held that Defendant was entitled to use the historical fact of Plaintiff's non-payment of pre-petition contributions when determining and assessing the rate of Plaintiff's future contributions under the OESA.[20]

In so holding, the Bankruptcy Court stated that it had difficulty accepting Plaintiff's characterization of the experience factor under 40 Okla.Stat. § 3–107 as either a "debt" or "penalty" which could be prioritized as a claim for taxes under the Bankruptcy Code and discharged upon confirmation of Plaintiff's Plan.[21] Finding "no frustration of federal law implicating the Supremacy Clause of the Constitution of the United States," the Bankruptcy Court followed *Primrose Bedspread Corp.*, and other cases cited by Defendant, which hold that pre-petition experience factors under state law may be utilized to calculate the post-petition tax rates of a Chapter 11 reorganized debtor.[22]

Upon reading the Bankruptcy Court's opinion, it is clear the Court's judgment resulted largely from an articulated difficulty in conceptualizing the 40 Okla.Stat. § 3–107 experience factor which caused Plaintiff's increased contribution rate as a "debt" or "penalty" which could be allowed, disallowed, prioritized or discharged in Plaintiff's bankruptcy proceeding. However, while this Court also experiences some difficulty applying the concept of "debt" to Defendant's assessment of increased contributions under section 3–107, the Court, nevertheless, feels compelled by the Bankruptcy Code's legislative history to find the Code's definitions of "claim" and "debt" to be broad enough to encompass the right to payment of additional contributions afforded to Defendant by that statutory provision.

Additionally, the Court finds the application of section 3–107 of the OESA to Plaintiff's particular case to render a result so directly in conflict with the goals and purposes of the Bankruptcy Code that it implicates the Supremacy Clause of the United States Constitution.[23] Therefore, the Court revisits the issues addressed by the Bankruptcy Court and, for the reasons discussed, reverses the Bankruptcy Court's holding.

## II. *OPINION.*

As both the Bankruptcy Court and the parties to this case apparently recognized, unemployment compensation contributions are considered and treated as a "tax" relating to employment under the Bankruptcy Code. 11 U.S.C. § 507(a)(7)(D); *Wolverine Radio Co.*, 930 F.2d at 1138; *In re Continental Minerals Corp.*, 132 B.R. 757, 759 (Bankr.

---

18. *See* Defendant's Answer, at pp. 2–4.

19. *Id.*

20. *See* Order Granting Defendant's Motion for Summary Judgment, Case No. BK–91–03283–BH; Adv. No. 94–1233–BH, at p. 6.

21. *Id.* at pp. 7–9.

22. *Id.* at p. 6–8.

23. Each of the cases cited by Plaintiff rest, in part, upon the proposition that the application of state law to permit assessment of increased contribution rates based upon the non-payment of claims for unemployment contributions by a Chapter 11 debtor prior to a plan's confirmation directly conflicts with the provisions of the Bankruptcy Code. U.S. Const. art. VI, cl. 2. *See Wolverine Radio Co., Inc.*, 930 F.2d at 1150; *Draggoo Electric Co., Inc.*, 57 B.R. at 920; *In re Active Steel Erectors, Inc.*, 53 B.R. at 853.

D.Nev.1991); *Matter of Lackawanna Detective Agency, Inc.*, 82 B.R. 336, 339 (Bankr. D.Del.1988); *Ravenna Ind. Inc.*, 51 B.R. at 497; *In re Pine Knob Investors*, 20 B.R. at 715. Because unemployment contributions are treated as a tax, claims for unemployment contributions are entitled to Seventh priority under the Bankruptcy Code, and bankruptcy courts have the power to make determinations regarding the legality of unemployment contribution rates. *See* 11 U.S.C. §§ 505(a)(1), 507(a)(7)(D). *See e.g., Wolverine Radio Co.*, 930 F.2d at 1138.

However, a bankruptcy court's power to determine the legality of an unemployment contribution rate must be exercised in a manner which is consistent with state law. *See Arkansas Corp. Comm'n. v. Thompson*, 313 U.S. 132, 145, 61 S.Ct. 888, 892, 85 L.Ed. 1244, 1250 (1941). This obligation to effectuate state law has prompted all courts considering the issue to hold that a state agency is, under most circumstances, permitted to utilize a Chapter 11 debtor's pre-petition history and experience factors when determining unemployment contribution rates for the reorganized debtor after confirmation of a plan. *See Wolverine Radio Corp.*, 930 F.2d at 1145–1148; *In re Primrose Bedspread Corp.*, 67 B.R. at 662; *Ravenna Industries, Inc.*, 51 B.R. at 501; *Matter of Pine Knob Investment*, 20 B.R. at 716–17. Thus, as properly noted by the Bankruptcy Court in this case, Defendant was generally entitled to utilize Plaintiff's pre-petition experience factors when determining Plaintiff's contribution rates following confirmation of Plaintiff's Plan.

However, the holdings of bankruptcy courts are markedly different when the particular experience factor which causes a debtor's contribution rates to rise results *solely* from non-payment of those unpaid contributions which comprise the Seventh priority claim addressed by a Chapter 11 debtor's plan of reorganization. Under such circumstances, all courts which have considered the issue hold that the particular experience factor which relates to the non-payment of those unemployment contributions which comprise a state agency's claim in the bankruptcy proceeding *may not* be utilized by the agency to assess an increase in the debtor's future contribution rates. *See Wolverine Radio Co., Inc.*, 930 F.2d at 1149–50; *Draggoo Electric Co., Inc.*, 57 B.R. at 920; *In re Active Steel Erectors, Inc.*, 53 B.R. at 852–55. *See also, In re Primrose Bedspread Corp.*, 67 B.R. at 660 (pre-petition experience factors may be used to assess contribution rates when the factors have nothing to do with the bankruptcy proceeding); *Ravenna Industries, Inc.*, 51 B.R. at 500 (pre-petition experience factors may be utilized to assess higher contribution rates when such factors have no relation to a debtor's filing of bankruptcy).

Support for this holding is found under the provisions of the Bankruptcy Code, and under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2. The Court will address its analysis under the provisions of the Bankruptcy Code first.

### A. Application of the Bankruptcy Code to Plaintiff's Case.

Under the Bankruptcy Code, a "claim" is any "right to payment," whether such claim is matured, unmatured, liquidated or unliquidated. 11 U.S.C. § 101(5)(A). Congress drafted the definition of "claim" broadly to assure courts would construe the term "claim" to include "virtually all legal or equitable rights to payment." *Bayless v. Crabtree Through Adams*, 108 B.R. 299, 305 (Bankr.W.D.Okla.1989), *aff'd.*, 930 F.2d 32 (10th Cir.1991); *Franklin Sav. Ass'n. v. Office of Thrift Supervision*, 150 B.R. 61, 63 (Bankr.D.Kan.1993), *aff'd.*, 31 F.3d 1020 (10th Cir.1994). Congress contemplated the broad definition would assure "all legal obligations of the debtor, no matter how remote or contingent, [would] be able to be dealt with" in the course and scope of the bankruptcy proceeding. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, Sen.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808.

In light of this legislative history, the Court holds that a state agency's statutory right to receive payment of additional unemployment contributions, as such right is reflected by an increased unemployment con-

tribution rate, is a "claim" which "arises" when a debtor's unemployment contribution payment is statutorily determined to be delinquent under state law. *See Wolverine Radio Co.*, 930 F.2d at 1150; *Draggoo Electric Co., Inc.*, 57 B.R. at 920; *In re Active Steel Erectors, Inc.*, 53 B.R. at 853–54. Under sections 502(i) and 507(a)(7)(D) of the Bankruptcy Code, this "claim" qualifies as a "tax entitled to priority" which, if it arises after commencement of the bankruptcy case, is to be treated by the bankruptcy court "as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(i). *See In re Active Steel Erectors, Inc.*, 53 B.R. at 852.

Because it is defined by law to be a "pre-petition priority claim" under section 502(i) of the Bankruptcy Code, the post-petition assessment of an increased contribution rate is deemed to have been included in, and settled by the debtor's Chapter 11 plan of reorganization. 11 U.S.C. §§ 1129(a)(9)(C), 1141(d)(1)(A). Upon confirmation, the plan binds both the debtor and the assessing state agency to the settlement of this "claim." 11 U.S.C. §§ 502(i), 1129(a)(9)(C), 1141(a). Under section 1141(d)(1)(A) of the Bankruptcy Code, any part of the "claim" which is not satisfied under the provisions of the plan is discharged as a debt when the Chapter 11 debtor's plan of reorganization is confirmed. *See* 11 U.S.C. § 101(12) (a debt is a "liability on a claim"); Sen.Rep. No. 95–989, 1978 U.S.C.C.A.N. at 5809 (the terms "debt" and "claim" are "co-extensive"); 11 U.S.C. § 1141(d)(1)(A) (the confirmation of a plan discharges the debtor from all debts of a kind specified in section 502(i) of the Bankruptcy Code). *See also, In re Active Steel Erectors, Inc.*, 53 B.R. at 853.

Applying the above-stated analysis to the instant case, the right of Defendant to receive payment of additional unemployment contributions as provided by the application of section 3–107 of the OESA to Plaintiff's case is a Seventh priority "claim" against Plaintiff's Chapter 11 bankruptcy estate and also a "debt" of Plaintiff under sections 101(5)(A), 101(12), and 507(a)(7)(D) of the Bankruptcy Code. Because Defendant's "claim" is a priority claim which is deemed to have arisen pre-petition under 11 U.S.C. § 502(i), it constitutes a "debt" which was discharged upon confirmation of Plaintiff's Plan of reorganization. 11 U.S.C. § 1141(d)(1)(A).

Consequently, this Court holds that Defendant's claim for an increased contribution rate based upon the application of section 3–107 to Plaintiff's unpaid, pre-petition unemployment contributions is a debt which was discharged upon confirmation of Plaintiff's Chapter 11 Plan of reorganization. Thus, Defendant cannot apply the fact of Plaintiff's non-payment of its first quarter–1991 contributions to raise Plaintiff's future contribution rates.

If, as Plaintiff contends and Defendant disputes, the increase in Plaintiff's contribution rate constitutes a "penalty" levied upon Plaintiff for missing the January 31, 1992 deadline under section 3–107 of the OESA, the holding of this Court remains essentially the same. To the extent such a "penalty" reflects reimbursement of Defendant for actual pecuniary loss, the increased contribution rate is treated as a pre-petition, priority claim under sections 502(i) and 507(a)(7)(G), and therefore is a debt which was discharged upon the Plan's confirmation under section 1141(d)(1)(A) of the Bankruptcy Code.

If the increased contribution rate is merely punitive in nature, then Defendant's claim constitutes a non-priority claim under 11 U.S.C. § 507(a)(7)(G) which arose prior to the date of confirmation of Plaintiff's Plan. *See In re Chief Freight Lines Co.*, 146 B.R. 291, 293 (Bankr.N.D.Okla.1992) (tax penalties which are merely punitive in nature are not afforded priority under 11 U.S.C. § 507). Such a claim is also a debt of Plaintiff which was discharged upon the Plan's confirmation. 11 U.S.C. § 1141(d)(1)(A) (confirmation of a plan discharges the debtor from any debt arising prior to the date of confirmation). *See Wolverine Radio Co.*, 930 F.2d at 1149–50; *Draggoo Electric Co., Inc.*, 57 B.R. at 919–20.

Therefore, whether the increased contribution rate resulting from the application of section 3–107 to Plaintiff's case is considered a penalty or not, the increased contribution

rate is a pre-confirmation "claim" of Defendant, and a "debt" of Plaintiff which was discharged when Plaintiff's Plan was confirmed by the Bankruptcy Court. Accordingly, this Court holds that under the provisions of the Bankruptcy Code, Defendant cannot use Plaintiff's failure to pay its first quarter–1991 contributions during the pendency of Plaintiff's bankruptcy case to assess higher contribution rates against Plaintiff post-confirmation. As will be discussed in the section of this opinion which follows, an identical result is compelled by the principles established by the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

### B. Effect of the Supremacy Clause on the Issues Presented in this Case.

Article VI, clause 2, of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land." Consequently, when a certain state law which applies to an issue is found to be in direct conflict with a federal law governing the same issue, the state law will found to be pre-empted. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 2619, 120 L.Ed.2d 407, 422–23 (1992), citing, *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). *See also, Pacific Gas & Electric Co. v. Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). Following this rule, when the application of a state's unemployment compensation laws result in a Chapter 11 debtor having to "choose" whether follow state law and pay unemployment contributions pre-confirmation (when making such payments runs afoul of the Bankruptcy Code), or to comply with the Bankruptcy Code and, as a result, pay penalties for failing to pay unemployment contributions (as required by state law), courts uniformly hold the state unemployment compensation laws to be superseded by the statutory provisions of the Bankruptcy Code. *Draggoo Electric Co., Inc.*, 57 B.R. at 920; *In re Active Steel Erectors, Inc.*, 53 B.R. at 854, citing, *Elliott v. Bumb*, 356 F.2d

749, 755 (9th Cir.1966), *cert. denied*, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966).

Fair and orderly payment of creditors' claims is one of the primary goals of any bankruptcy proceeding. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, Sen.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808. To assure fair and orderly payment of creditors' claims, the provisions of the Bankruptcy Code prevent a Chapter 11 debtor from paying pre-petition unemployment contribution claims until after the date of confirmation of the debtor's plan. *See* 11 U.S.C. § 1129(a)(9)(C); *Wolverine Radio Co.*, 930 F.2d at 1150; *Draggoo Electric Co., Inc.*, 57 B.R. at 920; *In re Active Steel Erectors, Inc.*, 53 B.R. at 854. *See also, Matter of Columbia Gas System, Inc.*, 136 B.R. 930, 940–41 (Bankr.D.Del.1992) (11 U.S.C. § 1108 does not permit a Chapter 11 debtor to pay pre-petition debts prior to a plan's confirmation); *In re Revco D.S.*, 91 B.R. 777, 781 (Bankr.N.D.Ohio 1988) (Chapter 11 debtor may not pay pre-petition tax debt prior to confirmation of a plan); *In re Hoffman*, 51 B.R. 42, 46 (Bankr.W.D.Ark.1985) (Chapter 11 debtor is not permitted to pay pre-petition debts under section 1108 of the Bankruptcy Code).

It follows that a state agency may not, by threatening the assessment of negative experience factors or penalties, effectively "coerce" a Chapter 11 debtor into granting the state agency a "super-priority" over other creditors...." when the state agency's pre-petition claims for unemployment contributions remain unpaid because a Chapter 11 bankruptcy proceeding is pending. *In re Active Steel Erectors, Inc.*, 53 B.R. at 854. *See also Draggoo Electric Co., Inc.*, 57 B.R. at 920 (a Chapter 11 debtor may not be forced to grant a state agency super-priority status in a Chapter 11 bankruptcy proceeding). Under such circumstances, the state laws which permit utilization of negative experience factors and the assessment of penalties to increase a Chapter 11 debtor's contribution rates must give way to the statutory provisions governing the orderly payment of claims in a Chapter 11 bankruptcy proceeding.

In this case, the Bankruptcy Code did not permit Plaintiff to pay its first quarter–1991 contributions except as provided by its Plan following the date of confirmation, *i.e.,* June 2, 1992, well after the deadline set by section 3–107 of the OESA. 11 U.S.C. §§ 1108, 1129(a)(9)(C). Thus, Plaintiff could not simultaneously satisfy the requirements of state *and* federal law with respect to the payment of its first quarter–1991 OESA contributions. Consequently, Plaintiff was confronted with the "no win" situation of having to choose whether to comply with state law, pay Defendant's claim prior to confirmation of its Plan, and take the chance that its Plan would not be confirmed; or to comply with federal law, leave Defendant's claim unpaid, and suffer the effective penalty of three consecutive years of increased contribution rates under section 3–107 of the OESA.

This is precisely the kind of circumstance the Supremacy Clause was meant to address. *See Pacific Gas & Electric Co.,* 461 U.S. at 204, 103 S.Ct. at 1722; *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). In a very real sense, it was Plaintiff's compliance with the Bankruptcy Code which caused Plaintiff to miss the deadline imposed by section 3–107 of the OESA. In this circumstance, the application of section 3–107 of the OESA to cause an increase in Plaintiff's post-petition contribution rates directly conflicts with the requirements of the Bankruptcy Code and undermines the protective function that a Chapter 11 bankruptcy was intended to perform. Sen.Rep. No. 95–989, 1978 U.S.C.C.A.N. at 5809.

The Court's obligation to give full faith and credit to the OESA must give way to the Court's duty to effectuate the goals and purposes of the Bankruptcy Code when, as here, the provisions of the OESA and the Bankruptcy Code are in irreconcilable conflict. *See e.g., Pacific Gas & Electric Co.,* 461 U.S. at 204, 103 S.Ct. at 1722; *Wolverine Radio Corp.,* 930 F.2d at 1146; *In re Active Steel Erectors, Inc.,* 53 B.R. at 853. Accordingly, this Court must hold section 3–107 of the OESA to be pre-empted, and Defendant's application of the provisions of section 3–107

to calculate an increase in Plaintiff's contribution rates for the 1992–94 calendar years forbidden under the Bankruptcy Code. *See* U.S. Const. art. VI, cl. 2; *Pacific Gas & Electric Co.,* 461 U.S. at 204, 103 S.Ct. at 1722.

### III. *CONCLUSION.*

The decision of the Bankruptcy Court in Case No. BK–91–03283–BH; Adv. No. 94–1233 is REVERSED, and the Judgement of that Court for Defendant is VACATED.

JUDGMENT IS GIVEN TO PLAINTIFF.

IT IS SO ORDERED this <u>24th</u> day of March, 1995.

> /s/ David L. Russell
> DAVID L. RUSSELL
> UNITED STATES DISTRICT COURT JUDGE

ENTERED IN JUDGEMENT DOCKET ON 3–24–95