*677 O’BRIEN, J.,
dissenting.
The noble Brutus
Hath told you Caesar was ambitious:
If it were so, it was a grievous fault, And grievously hath Caesar answered it....
:ic * *
And Brutus is an honourable man....
William Shakespeare, Julius Caesar, Act III, scene ii.
Procrastination, like ambition, is apparently a grievous fault. And, like Caesar, grievously hath Countrywide answered it. Not only grievously, but unnecessarily.
At a gut level this case pits a cozener against a dawdler. More to our purpose it pits the finality provision of the Bankruptcy Code, 11 U.S.C. § 1327,[1] against code provisions protecting mortgages on a principal residence from modification (in this case cancellation). 11 U.S.C. §§ 1322(b)(2) & (5),[2] 1328(a)(1).[3] The confirmed bankruptcy protection plan in this case derived from, at best, Davis’ careless and convenient error; at worst, a cold and calculated fraud. At bottom, the debtor misrepresented the amount, status and character of a secured debt — the mortgage lien securing a purchase money loan on his principal residence. His acts of deceit have netted him a nearly $70,000.00 windfall at the expense of Countrywide. The bankruptcy court would have no part of it. Nor should we. We should ignore the Bankruptcy Appellate Panel and affirm the bankruptcy court’s carefully considered and well reasoned opinion concluding that Countrywide’s mortgage lien survives this bankruptcy.[4] Since the majority goes another way, I respectfully dissent.
*678 In consideration of a purchase money-loan, Davis executed a note and mortgage to Countrywide on November 30, 1999. The mortgage was properly recorded on December 15, 1999, in Oklahoma County, Oklahoma. Davis made only four payments on the note, all in early 2000. Countrywide initiated a foreclosure action in state court in August 2000. Davis avoided service of process, requiring Countrywide to serve him by posting notice of the foreclosure suit on the door of the residence.
After Countrywide began the foreclosure action Davis filed a petition for relief under Chapter 13 of the Bankruptcy Code. He filed a plan with his petition listing the Countrywide’s secured debt not as a home mortgage but as a secured claim, further described as an “unperfected mortgage that will be avoided upon plan completion.”[5] Given Davis’ history with Countrywide, that statement was at best disingenuous. In any event it was untrue.
At the outset of his Chapter 13 case Davis had an obligation to “file a list of creditors, and ... a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor’s financial affairs....” 11 U.S.C. § 521(1). Since the plan was signed with a declaration “that the foregoing statements in this Chapter Plan [are] true & correct under penalty of perjury,” (Appellant’s App., Doc. 4 at 23), Davis’ obligation was to accurately represent the information contained therein.
Countrywide timely filed its proof of claim for $68,233.41 on February 9, 2001. That filing triggered a second obligation for Davis if he thought the claim was incorrect — he was required to object to the proof of claim, Fed. R. BankrP. 3007, and file an adversary proceeding to determine validity and proper amount of the claim. Fed. R. Bankr.P. 7001(2).
Davis failed on both scores, but his failings are rewarded. Davis has been permitted to “morph the status of a secured lien into an unsecured lien by simply stating it is so in [his] plan.” Altegra Credit Co. v. Dennis (In re Dennis), 286 B.R. 793, 795 (Bankr.W.D.Okla.2002); see Simmons v. Savell (In re Simmons), 765 F.2d 547, 555-56 (5th Cir.1985) (“It would be anomalous indeed were we to permit [the debtor] a windfall for his mischaracterization of [the creditor’s] claim in the plan as unsecured.”). The purpose of bankruptcy proceedings is to protect a debtor, not reward him for his manipulation of the process. Gamesmanship and unethical conduct are subject to sanction by bankruptcy courts under Rule 9011, Federal Rules of Bank *679 ruptcy Procedure.[6] See In re Lemons, 285 B.R. 327, 332-33 (Bankr.W.D.Okla.2002).[7] Nothing in the bankruptcy code or rules permits giving preclusive effect to fraud.
It is true Countrywide failed to file a perfected copy of the note and mortgage with its initial proof of claim. Particularly after seeing its mortgage listed in the plan as “unperfeeted,” Countrywide should have been more diligent in filing a proper proof of claim. However, the point of perfection is to protect innocent third parties— strangers, not parties, to the original transaction. Davis clearly knew he executed a note and mortgage with Countrywide only one year prior to filing the bankruptcy petition; his signature appears on both documents, and his initials are on each page.
The bankruptcy judge’s thorough analysis is persuasive and reaches the correct result. He acknowledged the tension between the procedural and substantive requirements of the code, and its finality provisions. He properly resolved the tension by making the plan binding, thus allowing Countrywide no distribution on its claim under the plan, but permitting Countrywide’s lien to survive the bankruptcy as a secured lien.
In reaching its decision, the bankruptcy court relied in part on Universal American Mortgage Company v. Bateman (In re Bateman), 331 F.3d 821 (11th Cir.2003). The factual background in Bateman is similar to the case at hand. In Bateman, the mortgage company failed to object to the amount provided for its claim in the plan, and did not appeal the subsequent confirmation order. 331 F.3d at 823. It later sought relief from the bankruptcy court, filing a motion to dismiss the plan due to its failure to comply with the bankruptcy code. Id.
The Eleventh Circuit noted the case “pit[] the procedural requirements and substantive provisions of 11 U.S.C. §§ 502(a), 1322, and 1325 of the bankruptcy code, against the res judicata effect of a confirmed plan under 11 U.S.C. § 1327.” Id. at 825. The court reviewed the respective responsibilities of the debtor and creditor. It noted the debtor’s responsibility to list claim amounts and their proposed treatment under the plan, the creditor’s duty to file a proof of claim, and finally the debtor’s correlative obligation to file an objection if he wished to contest the amount or validity of the claim. Id. at 827.
The court then focused on the nature of a secured creditor’s claim. While a secured creditor “need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien,” id., it must file a timely proof of claim if it wishes to receive payments under the confirmed plan. Id.; see In re Tarnow, 749 F.2d 464, 465 (7th Cir.1984) (Acknowledging the “long line of cases ... [which] allow[ ] a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt.”). The court held § 1322(b)(2) “specifically prohibits any modification of a homestead mortgagee’s rights in the Chap *680 ter 13 plan.... [T]he plan is prohibited from reducing the mortgagee’s secured claim.” Bateman, 331 F.3d at 826 (internal citations omitted). Thus, the court concluded, “a secured creditor’s lien survives a contrary plan confirmation.” Id. at 830. The secured creditor retains its rights pursuant to the terms of the mortgage, despite the terms of the plan. Id. at 834.
At the same time, the Eleventh Circuit acknowledged the preclusive effect afforded to confirmed plans under § 1327, and held a creditor could not collaterally attack a plan to which it had not earlier objected. Id. at 822, 829-30. The creditor remains bound by the plan during its operation, including the number and amount of any payments it will or will not receive during the plan. Id. at 829-30. The creditor’s secured claim, however, remains unaffected by the plan “and survives the bankruptcy unimpaired.” Id. at 832. The secured creditor retains its rights and after the automatic stay provided for in the plan is lifted, is “entitled to act in accordance with the rights as provided in the mortgage to satisfy its claim.” Id. at 834.
The bankruptcy court here followed the same analytical process, reviewing the nature of Countrywide’s claim, and the respective duties of creditor and debtor in a bankruptcy proceeding. It gave appropriate effect to the substantive provisions of the code and the procedural requirements of the rules. The court relied on the language of § 1322(b)(2) in finding Davis was prohibited from modifying Countrywide’s rights simply by inserting a contrary phrase in his plan. The mortgage obligation was not dischargeable in bankruptcy, because the last payment was due after the conclusion of the term of the plan. See 11 U.S.C. § 1328(a)(1).
The court also focused on Davis’ obligation to object to Countrywide’s proof of claim. Countrywide filed a timely proof of claim under Rule 3001(f), Federal Rules of Bankruptcy Procedure.[8] Countrywide’s amended claim was “deemed allowed,” 11 U.S.C. § 502(a), triggering Davis’ obligation to object under § 502(a) and Rules 3007 and 7001(2), Federal Rules of Bankruptcy Procedure. See Simmons, 765 F.2d at 554 (when debtor does not object, a claim is deemed allowed under a plan).
Finally, the bankruptcy court acknowledged the finality provisions of § 1327 and gave preclusive effect of the plan — to the extent it bound Countrywide to the terms of the plan and ruled Countrywide would not receive payments on its claim during the plan’s operation. Consistent with the analysis in Bateman, it held that Countrywide’s mortgage was unaffected by the plan and survived the bankruptcy.
Because we can affirm the court “on any grounds for which there is a record sufficient to permit conclusions of law, ...” Garcia v. Lemaster, 439 F.3d 1215, 1220 (10th Cir.2006), I would affirm the bankruptcy court’s holding that § 1322 prohibits any modification of a homestead mortgagee’s rights through a Chapter 13 plan, particularly a plan which contains a substantial misrepresentation as to the nature of a secured claim. I would further affirm *681 its holding that Countrywide’s lien survives the bankruptcy unimpaired, and at the conclusion of the plan Countrywide retains its rights to pursue appropriate action on its mortgage (foreclosure). Finally, I would affirm the court’s holding that the plan has binding effect during its term.

. 11 U.S.C. § 1327 (Effect of confirmation) provides:
(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

. 11 U.S.C. §§ 1322(b)(2) and (5) (Contents of plan) provide:
(b) Subject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
(S) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

. 11 U.S.C. § 1328 (Discharge) provides in relevant part:
(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(1) provided for under section 1322(b)(5) of this title....

. We look past the BAP and independently review the bankruptcy court’s decision. Lampe v. Williamson (In re Lampe), 331 F.3d 750, 753 (10th Cir.2003); In re Albrecht, 233 F.3d 1258, 1260 (10th Cir.2000). We review a grant of summary judgment by the bank *678 ruptcy court de novo, applying "the same legal standards as those applied by the bankruptcy and district courts, i.e. those set forth in Fed.R.Civ.P. 56(c)." Hollytex Carpet Mills, Inc. v. Okla. Employment Sec. Comm’n (In re Hollytex Carpet Mills Inc.), 73 F.3d 1516, 1518 (10th Cir.1996).

. According to Davis’ "Combined Response to Motion to Dismiss ..filed in response to Countrywide's motion for sanctions, "[a]t the direction of [Davis'] Counsel, [Davis] made three (3) separate trips to the county court house to obtain all mortgages filed against his real estate. On each occasion, [Davis] was unable to locate [Countrywide's] mortgage.” (Combined Response to Motion to Dismiss at 1, In re Carl G. Davis, Bankr.W.D. Okla. 00-19757 (Aug. 11, 2005)). See San Juan County, Utah v. United States, 420 F.3d 1197, 1202 n. 2 (10th Cir.2005) (under Rule 201, Fed. R.Evid., an appellate court can take judicial notice of documents not appearing in the record). Davis was, at the very least, on inquiry notice with respect to a mortgage he signed. A proper check of the land records would have revealed the mortgage to have been properly and timely recorded, and therefore perfected. Such record checking was the responsibility of Davis' attorney and could not be fulfilled by sending a client with no apparent experience (and a self-serving interest) to do title research. Davis is represented by different counsel on appeal.

. The bankruptcy court in this case ordered Davis and his counsel to appear before it at a later time "prepared to show cause why sanctions should not be imposed in this matter.” (Appellant’s App., Doc. 16 at 125.) The bankruptcy court's comments about sanctions, and discussion in this opinion about counsel's conduct, must be read to refer only to Davis' original counsel, not appellate counsel.

. The opinion in Lemons was by The Honorable Niles L. Jackson, the same bankruptcy judge who granted judgment in favor of Countrywide.

. Rule 3001(f) provides, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.” Subsection (d) states: "If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.” Fed. R. Bankr.P. 3001(d). Here, the original proof of claim was not accompanied by a properly perfected copy of the mortgage and note. The bankruptcy court allowed Countrywide to amend its claim, and ruled that once the claim was properly amended, it would be “deemed allowed.” Countrywide timely filed its amended proof of claim.